UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

LIBERTY MEDIA CORPORATION, LMC
CAPITAL LLC, LIBERTY
PROGRAMMING COMPANY LLC, LMC
USA VI, INC., LMC USA VII, INC., LMC
USA VIII, INC., LMC USA X, INC.,
LIBERTY HSN LLC HOLDINGS, INC.,
and LIBERTY MEDIA INTERNATIONAL,
INC.,

                Plaintiffs,

    - against -

VIVENDI UNIVERSAL, S.A., JEAN-
MARIE MESSIER, GUILLAUME
HANNEZO, and UNIVERSAL STUDIOS,
INC.,

                Defendants.

------------------------------------------------------X

**OPINION AND ORDER**

03 Civ. 2175 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/11/12

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

At a conference held on March 7, 2012, I orally (1) granted in part
and denied in part plaintiffs' motion for partial summary judgment on the grounds
of collateral estoppel, (2) denied defendants' motion for partial summary judgment
against all plaintiffs, and (3) denied defendants' motion for reconsideration of
Judge Richard Holwell's February 6, 2012 Memorandum Opinion and Order.[1]   At

---

      [1]     *See* 3/7/12 Transcript ("Tr.") [Docket No. 218].

-1-

that time, I stated that a written opinion would follow.

## II.   DEFENDANTS' MOTION FOR RECONSIDERATION OF THE FEBRUARY 6, 2012 MEMORANDUM OPINION AND ORDER

Defendants brought this motion for reconsideration of the February 6, 2012 Memorandum Opinion and Order ("SLUSA Opinion").[2]  In the SLUSA Opinion, Judge Holwell provided the rationale for his March 2, 2009 oral ruling denying defendants' Motion for Partial Judgment on the Pleadings ("SLUSA Motion").  For the following reasons, defendants' motion for reconsideration is denied.

### A.   Legal Standard

Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court.[3]  A motion for reconsideration is appropriate where "'the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'"[4]  A motion for reconsideration may also be granted to "'correct a clear error or prevent

---

[2]      Docket No. 204.

[3]      *See Patterson v. United States*, No. 04 Civ. 3140, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006 ) ("The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court.") (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

[4]      *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation omitted).

manifest injustice.'"[5]

> The purpose of Local Rule 6.3 is to "'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"[6]  Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[7]  Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively, to reargue "'those issues already considered when a party does not like the way the original motion was resolved.'"[8]  A motion for reconsideration is not an "opportunity for making new arguments that could have been previously advanced,"[9] nor is it a substitute for appeal.[10]

---

[5]     *RST (2005) Inc. v. Research in Motion Ltd.*, No. 07 Civ. 3737, 2009 WL 274467, at *1 (S.D.N.Y. Feb. 4, 2009) (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

[6]     *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *SEC v. Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001).

[7]     *United States v. Treacy*, No. 08 Cr. 0366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation omitted).

[8]     *Makas v. Orlando*, No. 06 Civ. 14305, 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)).

[9]     *Associated Press v. United States Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

[10]     *See Grand Crossing, L.P.*, 2008 WL 4525400, at *3.

## B.    Discussion[11]

Judge Holwell's decision to deny defendants' SLUSA motion was based on the fact that, after the Court vacated the order consolidating Liberty Media with the class action, the Liberty Media action was no longer a "covered class action" within the meaning of SLUSA.[12]  *First*, Judge Holwell's decision to vacate the consolidation order was well within the Court's "inherent power to reconsider and modify its interlocutory orders."[13]  He properly considered the prejudice caused to Liberty Media by the consolidation order when vacating it because consolidation is a discretionary doctrine.[14]  Accordingly, there is no reason to reconsider the propriety of de-consolidation.

*Second*, defendants raise no new arguments in their motion for reconsideration that were not considered in the SLUSA opinion.  Judge Holwell considered defendants' argument that de-consolidation could never save state-law claims from a SLUSA dismissal and rejected it.[15]  He noted that the present tense of SLUSA – precluding state-law claims where multiple lawsuits "*are* joined,

---

[11]     Familiarity with the background and applicable law of the SLUSA Opinion is presumed.

[12]     *See* SLUSA Opinion at 3.

[13]     *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982).

[14]     *See Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973).

[15]     *See* SLUSA Opinion at 11-12 (rejecting an "argument that consolidation *per se*—even when followed by vacatur of such consolidation—brings an action within the statutory definition.").

consolidated, or otherwise proceed as a single action for any purpose"[16] – means that suits not currently consolidated are not properly subject to SLUSA preclusion. Moreover, the effect of vacating a consolidation order "is as if the order never existed," and the parties return "to their original positions."[17]  Therefore, he concluded that this action is not a "covered class action" within the meaning of SLUSA.

       *Third*, defendants fail to point to any controlling law which compels a contrary result.  Defendants rely on *Dabit v. Merrill Lynch, Pierce, Fenner & Smith*[18] for the proposition that "it is absolutely unequivocally clear that if the SLUSA . . . criteria are met, . . . the state claims[] must be dismissed."[19]  This is undisputed.  Rather the question is whether all of the SLUSA criteria, in fact, are met.  Additionally, defendants rely on *Instituto De Prevision Militar v. Merrill Lynch*.[20]  However, an out-of-circuit decision is not a "controlling decision"

---

[16]     15 U.S.C. § 78bb(f)(5)(b)(ii) (emphasis added).

[17]     *Bryan v. BellSouth Comms. Inc.*, 492 F.3d 231, 241 (4th Cir. 2007).

[18]     395 F.3d 25, 33-34 (2d Cir. 2005), *rev'd on other grounds*, 547 U.S. 71 (2006).

[19]     3/7/12 Tr. at 3:6-9.

[20]     546 F.3d 1340 (11th Cir. 2008).  At oral argument, defense counsel stated that "[t]here is a case from the 9th Circuit in which the exact same thing happened.  The 9th Circuit said I am sorry it got consolidated and you don't have the discretion to de-consolidate."  3/7/12 Tr. at 5:12-15.  As defendants' memorandum does not cite any caselaw from the Ninth Circuit, *see* Defendants' Memorandum of Law in Support of Their Motion for Reconsideration of the Court's Memorandum Opinion and Order Entered February 6, 2012 at ii, I assume

sufficient to justify reconsideration.  In addition, I note that *Instituto De Prevision Militar* did *not* hold that the district court lacked the discretion to de-consolidate. Indeed, there is no indication in the Eleventh Circuit decision that the district court ever considered de-consolidation.  Rather, the district court dismissed the case under SLUSA, and the Eleventh Circuit affirmed.  Admittedly there is dicta that supports defendants' position that plaintiffs should have objected at the time of consolidation; however, the circumstances of *Instituto De Prevision Militar* are distinguishable because the plaintiff there requested consolidation *while* a motion to dismiss based on SLUSA was being briefed.[21]  Here, in contrast, defendants' moved for consolidation, over plaintiffs' objection, nearly five years before raising the SLUSA issue.[22]

Finally, defendants' request for leave to file an interlocutory appeal is also denied.  Such an appeal would significantly delay the trial and the Second Circuit, in denying defendants' petition for a writ of mandamus on this issue, noted that "the issues addressed in the petition can be effectively presented in an appeal

---

defense counsel meant to refer to the Eleventh Circuit.

[21]      *See id.* at 1344.

[22]      *See* Liberty Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Reconsideration of the Court's Memorandum Opinion and Order Entered February 6, 2012, at 2.

from the final judgment."[23]  In the event defendants successfully appeal this decision, the Second Circuit could simply reverse any judgment on the remaining state law claims.

## III.   DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST ALL PLAINTIFFS

### A.   Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24]  "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit  under the governing law.'"[25]

"The moving party bears the burden of establishing the absence of any genuine issue of material fact."[26]  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's

---

[23]     *Liberty Media v. Vivendi Universal, S.A.*, No. 03 Civ. 2175, Docket No. 200 (2d Cir. Nov. 22, 2011).

[24]     Fed. R. Civ. P. 56(a).

[25]     *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

[26]     *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

claim."[27]  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.  To do so, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[28] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[29]

In deciding a motion for summary judgment, a court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"[30]  However, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[31] "'The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'"[32]

---

[27]    *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

[28]    *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

[29]    *Id.* (quoting *Federal Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

[30]    *See Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams*, 368 F.3d at 126).

[31]    *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

[32]    *Brod*, 653 F.3d at 164 (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

**B.     Background**[33]

On December 16, 2001, the parties executed an Agreement and Plan of Merger and Exchange ("Merger Agreement"), which involved, in part, a commitment for Liberty Media to exchange its multiThématiques shares for Vivendi securities, namely American Depository Shares ("ADSs").[34]  On that date, Robert Bennett, Liberty Media's CEO, signed the Merger Agreement in Colorado on behalf of Liberty Media and faxed his signature page to New York.[35]  Another signatory, Jean-Marie Messier, Vivendi's CEO, was in New York on December 17, 2001 to announce the merger,[36] and there is no evidence to indicate that he was anywhere else on December 16, 2001, when he signed the merger agreement on behalf of Vivendi.

On May 7, 2002, the merger closed.  Instead of exchanging ADSs, the parties exchanged multiThématiques shares for Vivendi ordinary shares.  Liberty

---

[33]     Familiarity with the facts of this case is assumed.  Only those facts necessary to the disposition of these motions will be discussed.

[34]     *See* 12/16/01 Agreement and Plan of Merger and Exchange, Ex. 1 to 7/25/11 Declaration of Bryan H. Parr, Esq., plaintiffs' counsel, in Support of the Liberty Media Plaintiffs' Memorandum of Law in Opposition to Defendants Vivendi, S.A.'s and Universal Studios, Inc.'s Motion for Partial Summary Judgment Against All Plaintiffs ("Parr Decl.").

[35]     *See* 12/16/01 Fax Cover Page from Robert Bennett to Frederick "Buzz" McGrath, Ex. 13 to Parr Decl.

[36]     *See* 12/17/01 Vivendi, Vivendi Universal, and USA Networks, Inc. Press Conference Advisory, Ex. 14 to Parr Decl.

Programming France, Inc. endorsed and delivered transfer orders to multiThématiques, which recorded Vivendi's subsidiary as the new owner of the shares in multiThématiques' share register in Boulogne Billancourt, France.[37] Vivendi's Paris-based transfer agent recorded the transfer of Vivendi shares to the Liberty Media parties in Vivendi's share register in Paris.[38]  These transactions were memorialized in a letter agreement dated "as of May 7, 2002" but executed on May 8, 2002.[39]

### C.    Extraterritorial Application of Section 10(b)

"Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States."[40]  Although the first prong of *Morrison* ("the purchase or sale of a security listed on an American stock exchange") is rather straightforward, the second prong ("the purchase or sale of any other security in the United States") has presented many questions of interpretation for lower courts.

The Second Circuit recently clarified the second prong of *Morrison*

---

[37]    *See* Liberty's Counterstatement of Material Facts ("CSOF") ¶¶ 47-48.

[38]    *See id.* ¶¶ 50, 58.

[39]    Letter Agreement, Ex. 18 to Parr Decl.

[40]    *Morrison v. National Australian Bank Ltd.*, 130 S. Ct. 2869, 2888 (2010).

holding that "to sufficiently allege the existence of a 'domestic transaction in other securities,' plaintiffs must allege facts indicating that irrevocable liability was incurred or that title was transferred within the United States."[41]  After looking at the Exchange Act definitions for "purchase" and "sale," the Second Circuit noted that "that the 'purchase' and 'sale' take place when the parties become bound to effectuate the transaction,"[42] thereby equating "irrevocable liability" with entering into a binding contract.

### C.   Discussion

Irrevocable liability was incurred when the Merger Agreement was executed on December 16, 2001.  The Merger Agreement was a binding agreement, not a preliminary agreement, and therefore satisfies the standard for irrevocable liability.  Although there were conditions to be satisfied before closing and the eventual performance of the Merger Agreement was effectuated by the transfer of a different security than originally intended, this is insufficient to establish that irrevocable liability occurred later.  Although the parties did amend the Merger Agreement, the binding obligation to effectuate the merger and the exchange for Vivendi securities occurred on December 16, 2001.

At oral argument, defense counsel argued that my decision concerning

---

[41]     *Absolute Activist Value Master Fund, Ltd. v. Ficeto*, No. 11 Civ. 221, 2012 WL 661771, at *1 (2d Cir. Mar. 1, 2012) (quoting *Morrison*, 130 S. Ct. at 2884).

[42]     *Id.*

irrevocable liability would lead to absurd results by means of presenting a

hypothetical.  In that hypothetical, two French companies negotiated an agreement

in France for the exchange of French stock, but later the agreement was amended

to "swap [Vivendi] ADS[s]" so that "you would then have a swap of two securities

traded and listed on the New York Stock Exchange that would fall outside the

securities laws because we're focusing on the wrong date."[43]  This hypothetical is

totally inapposite because *Absolute Activist* does not concern securities listed on a

U.S. stock exchange; rather, the first prong of *Morrison* provides the basis for

application of Section 10(b) in such a situation.  Likewise, defense counsel

presented another argument relating to the first prong of *Morrison*, which was

equally inapposite because *Absolute Activist* and the second prong of *Morrison* are

the basis for application of Section 10(b) to the multiThématiques transaction.[44]

Having established that the operative date for irrevocable liability is

December 16, 2001, the facts indicate that the multiThématiques transaction was a

domestic transaction such that it falls within the scope of the Exchange Act under

*Morrison* and *Absolute Activist*.  Liberty Media's CEO signed the Agreement in

Colorado and faxed his signature page to New York.  Messier, Vivendi's CEO,

was in New York the morning of December 17, 2001 to announce the agreement,

---

[43]     3/7/12 Tr. at 33-34.

[44]     *See id.* at 34.  The second hypothetical involved two French
companies initially agreeing to exchange ADSs and later exchanging ordinary
shares.

and there is no evidence indicating that he was anywhere else on December 16.

Accordingly, I need not reach the question of where title was transferred to deny

defendants' motion.

## IV.   PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE GROUNDS OF COLLATERAL ESTOPPEL

On the basis of the jury verdict in the class action trial, plaintiffs move

for collateral estoppel with respect to the falsity, materiality, and scienter elements

of their Section 10(b) claim for twenty-five misstatements the plaintiffs intend to

use in this case for which the class action jury found Vivendi liable.  In addition,

plaintiffs move for partial summary judgment that certain terms of the Merger

Agreement were breached by Vivendi.  For the following reasons, plaintiffs'

request for collateral estoppel is granted and plaintiffs' request for partial summary

judgment is granted with respect to section 3.11 of the Merger Agreement and

denied with respect to section 3.12 of the Merger Agreement.

### A.   Applicable Law

Collateral estoppel bars re-litigation of an issue where "(1) the

identical issue was raised in a previous proceeding; (2) the issue was actually

litigated and decided in the previous proceeding; (3) the party had a full and fair

opportunity to litigate the issue; and (4) the resolution of the issue was necessary to

support a valid and final judgment on the merits."[45]  A court should also consider

---

[45]   *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).

whether estoppel would be unfair to the defendant because the current plaintiff could have easily joined the earlier action, the current suit was not foreseeable, the defendant had little incentive to defend the first action vigorously, or the second action affords the defendant procedural opportunities that could cause a different result.[46]

### B.   Discussion

The second, third, and fourth prongs of the collateral estoppel test are not seriously disputed here – the falsity, materiality, and scienter associated with Vivendi's public statements were actually litigated in the class trial, Vivendi had a fair opportunity and very strong incentive to litigate the issue, and the finding was necessary to support the jury verdict.  Although there is no final judgment yet, the issues remaining to be resolved in the class action concern only damages and reliance.  Thus, the jury verdict (which was upheld after a post-trial motion) is sufficiently "final" for purposes of collateral estoppel.[47]

The remaining issues are whether the "identical issue" was raised in the class trial and whether application of collateral estoppel would be fair to the defendants.  Vivendi makes three arguments concerning how different issues are

---

[46]     *See Parklane Hoisery Co. v. Shore*, 439 U.S. 322, 330-31 (1979).

[47]     *See Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961) ("finality" in this context "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again").

presented in this action and collateral estoppel cannot apply: (1) the standard for

"materiality" differs between the class action and the Liberty Media action;  (2) the

legal standard for Section 10(b) claims has changed since the class action; and (3)

the language of the Merger Agreement was not at issue in the class action.

### 1.    Materiality

Vivendi argues that the standard for materiality differs between the

class action and the Liberty Media action.[48]  However, because materiality requires

application of an objective standard, the issue of materiality here is identical to the

issue of materiality decided by the jury in the class trial.  In *Caiola v. Citibank*, the

Second Circuit held that a disclaimer in a securities contract was irrelevant to

materiality, which was described as an "objective standard."[49]  Instead, the

disclaimer and the sophistication of the plaintiff were properly considered in

relation to the reliance element of the Rule 10b-5 claim.[50]  Accordingly,

defendants' arguments that the Liberty Media action is distinguishable from the

class action based on the sophistication of the plaintiff and the unique

circumstances arising from the Merger Agreement properly go to the element of

reliance, not materiality.

---

[48]    *See* 3/7/12 Tr. at 29:1-2 ("Our argument is in the context of all of this, it wasn't material to them [Liberty Media].").

[49]    295 F.3d 312, 328-29 (2d Cir. 2002).

[50]    *See id.* at 330.

### 2.     Changing Legal Standards

Vivendi argues that the jury verdict was rendered applying a defunct legal standard.  The jury was instructed that plaintiffs must prove that Messier, Hannezo, "'or any other Vivendi agent or employee made the statement to the public with the required state of mind while acting within the scope of his or her authority'"; and that the jury was to "'attribute to Vivendi the mental state possessed by the Vivendi agent or employee who made the statement.'"[51]

Vivendi mis-characterizes the Supreme Court's recent decision in *Janus Capital Group, Inc. v. First Derivative Traders*[52] when it frames the inquiry as looking to ultimate authority *instead* of attribution.  Vivendi's brief states that "the 'maker' of the statement for purposes of Section 10(b) is not the agent to whom the statement was attributed, but rather 'the entity with ultimate authority over the statement, including its content and whether and how to communicate it.'"[53] But *Janus* states that "in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was

---

[51]     Defendants Vivendi, S.A.'s and Universal Studios, Inc.'s Memorandum of Law in Opposition to Plaintiffs' Motion to Limit the Issues to Be Litigated at Trial and for Partial Summary Judgment on Grounds of Collateral Estoppel at 12-13 ("Collateral Estoppel Opp. Mem.") (quoting Charge to the Jury Nos. 23-24).

[52]     131 S. Ct. 2296 (2011).

[53]     *Id.* at 13 (quoting *Janus*, 131 S. Ct. at 2302).

made by—and only by—the party to whom it is attributed."[54]

Even though the law differs now in some respects as to who "makes" a statement under Section 10(b), there is no dispute as to whether Vivendi had "ultimate authority" under *Janus*.  Vivendi cannot seriously claim that it did not have ultimate authority over documents it filed with the SEC or French securities regulators, regardless of who signed such documents.[55]  Moreover, there is no issue of fact that the documents containing the omissions and misstatements, including press releases, went through a long vetting process and were ultimately approved by the Board of Directors, indicating that the corporation had ultimate control.[56]  Accordingly, the legal standard for Section 10(b) claims has not changed in any relevant sense that would bar the application of collateral estoppel against Vivendi.

---

[54]   *Janus*, 131 S. Ct. at 2302.

[55]   *See id.* at 2304 (holding that Janus Investment Fund made statements in prospectuses under Section 10(b) because "[o]nly Janus Investment Fund . . . bears the statutory obligation to file the prospectuses with the SEC").

[56]   *See, e.g.*, 9/25/01 Minutes of the Meeting of the Board of Directors, Ex. C to 6/30/11 Declaration of Paul B. Maslo, counsel to Messier ("Jean-Marie Messier submitted *three draft press releases* to be issued in connection with the first half of 2001 results, the cancellation of shares and the BskyB divestiture, *which were approved by the Board*." (emphasis added)); Defendants' Memorandum of Law in Opposition to Liberty Media Plaintiffs' Motion in Limine to Preclude Defendants from Introducing Any Evidence that Vivendi's Counsel Reviewed and/or Approved Vivendi's Public Disclosures or that Defendants Lack Scienter Because They Reasonable Relied on that Review; Memorandum of Law in Opposition to Plaintiffs' Motion in Limine to Preclude Defendants from Arguing or Offering Evidence Related to the Review and Approval of Vivendi's Accounts by Its Auditors.

### 3.    The Merger Agreement

Vivendi argues that the Merger Agreement was not at issue in the class trial.  This is obviously true – and beside the point.  Plaintiffs do not seek collateral estoppel on the Merger Agreement itself.  Rather, based on the finding by the class action jury that twenty-five statements were false, plaintiffs seek a ruling that certain clauses in the Merger Agreement were breached based on their unambiguous language.

### a.    Standard Under Section 3.11 of the Merger Agreement

Defendants argue that the standard under section 3.11 of the Merger Agreement differs from Section 10(b).  *First*, according to Vivendi, the jury applied the reasonable investor standard in finding Section 10(b) liability.  However, Vivendi argues that the purpose of section 3.11 was to ensure Liberty Media would fully understand Vivendi's situation and not be misled by anything in public filings.  Vivendi's argument is not convincing.  Section 3.11 practically borrows the language of Section 10(b) and Rule 10b-5.[57]  No reasonable juror could distinguish a breach of Rule 10b-5 and a breach of section 3.11.

*Second*, Vivendi argues that section 3.11 differs from Rule 10b-5

---

[57]    Section 3.11 warrants that certain Vivendi securities filings "did not contain *any untrue statement of a material fact or omit to state a material fact* required to be stated therein or *necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading*." Merger Agreement § 3.11, Ex. 1 to Parr Decl. (emphasis added).

because documents are only misleading if they were not "revised or superseded by a later filed document."[58]  Because there is no evidence that any of the statements at issue were "revised or superseded by a later filed document," this distinction between Rule 10b-5 and the language of section 3.11 does not serve as a basis for barring the application of collateral estoppel.  Accordingly, plaintiffs' request for partial summary judgment with respect to section 3.11 of the Merger Agreement is granted.  However, as discussed in the following section, the exact number of misstatements covered by section 3.11 will be determined at a later time.

### b.    Scope of Section 3.11 of the Merger Agreement

The parties dispute which statements fall within section 3.11 of the Merger Agreement.  Plaintiffs represent that Vivendi concedes that sixteen of the documents encompassed by the jury verdict are within the scope of section 3.11.[59]

This leaves a dispute over whether nine documents, Forms 6-K and press releases, fall within the scope of section 3.11.  The parties vigorously contest whether such documents are "filed with" or "furnished to" the SEC, and this issue is determinative of whether these nine documents are covered by section 3.11.  At this time, I decline to rule on whether these nine documents fall within the scope of section 3.11.  Rather, at the close of the evidence at trial, the parties may move for

---

[58]    Collateral Estoppel Opp. Mem. at 16.

[59]    *See* Liberty Media Plaintiffs' Memorandum of Law in Support of Their Motion to Limit the Issues to Be Litigated at Trial and for Partial Summary Judgment on Grounds of Collateral Estoppel at 14-15.

a directed verdict.  At that time, I will decide whether those documents are included in section 3.11 as a matter of law, or, if there is a question of fact, I will instruct the jury to make a finding concerning the scope of section 3.11.[60]

### c.    Section 3.12 of the Merger Agreement

Section 3.12 warrants that Vivendi's business "has been and is presently being conducted in compliance with all Applicable Laws" and that any violations "individually or in the aggregate" did not result in a "Universal Material Adverse Effect."[61]  Plaintiffs argue that the verdict in the class trial estops Vivendi from arguing that it was "in compliance with all Applicable Laws."  Vivendi argues that section 3.12 does not warrant that Vivendi is in full compliance with every applicable law; rather, it warrants that Vivendi's "business" (or operations) is being conducted in compliance with applicable laws.  Vivendi argues that its financial reporting is distinct from its core business.  Indeed, section 3.01 distinguishes "business" from "assets, condition (financial or otherwise) or results of operations."

Considering Vivendi's arguments, and looking at the Merger Agreement as a whole, there are factual questions for the jury concerning section

---

[60]    See 3/7/12 Tr. at 22:11-15 ("THE COURT: . . .  It is of no moment unless you [the jury] conclude that it was filed as a term of art as opposed to furnished under the terms of the merger agreement.  If you determine that it was not filed, ignore those 9, they're not in the case.").

[61]    Merger Agreement § 3.12.

3.12. Specifically, I find that the phrase "the business of Vivendi" is ambiguous. Accordingly, plaintiffs' request for partial summary judgment with respect to section 3.12 is denied.

### 3.    Efficiency and Fairness Concerns

Vivendi devotes many pages of its opposition memorandum urging the Court not to grant collateral estoppel because it would not enhance efficiency. I find that this argument has little merit because collateral estoppel serves other policy goals as well. Specifically, application of collateral estoppel here would "prevent[] inconsistent decisions," thereby "encourag[ing] reliance on adjudication."[62] Nonetheless, I believe that collateral estoppel should shorten the trial. Moreover, I have considered fairness considerations. As a result, I only granted collateral estoppel after receiving reassurances from plaintiffs that they will prosecute their case in a manner so that defendants will not face unfair prejudice.

### a.    Number of Statements

Defendants contend that there will be no efficiency gain because collateral estoppel can only be invoked with respect to twenty-five of fifty-one statements at issue. Thus, plaintiffs will still have to prove falsity, materiality and scienter with respect to the other twenty-six statements. Fairness concerns are implicated because it would be nearly impossible for defendants to challenge

---

[62]    *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

falsity, materiality, and scienter for those statements after the jury is instructed about the other twenty-five statements.

Due to these concerns, I encouraged the parties to find a mutually acceptable resolution because I believe that an efficient trial, avoiding the issues of falsity, materiality and scienter, would benefit all parties.  On the one hand, it is in plaintiffs' best interest to simplify the trial and not raise every possible misstatement by Vivendi, which would needlessly prolong the trial.  On the other hand, defendants would present a more effective case by focusing on Liberty Media's reliance, rather than contesting statements substantially similar to those raised in the class action.  As a result, defendants have agreed to a stipulation under which they will not challenge the elements of falsity, materiality and scienter with respect to certain statements not subject to this collateral estoppel ruling for purposes of this trial.[63]  This agreement furthers the efficiency gains resulting from the collateral estoppel ruling without any unfair prejudice to the defendants.

### b.    Common Law Fraud Claim

Defendants argue that plaintiffs will be required to present their entire case to establish common law fraud because such claims require a higher burden of proof than for Section 10(b).  According to defendants, collateral estoppel would be unfair because the jury would be instructed that fraud, under Section 10(b), has been proven by a preponderance of the evidence and then be asked to determine

---

[63]    *See* 4/9/12 letter from defendants' counsel to the Court.

whether the same fraud has been demonstrated by clear and convincing evidence.
This surely would be a difficult task for a jury and prejudicial to the defendants.
As a result, plaintiffs have agreed to not pursue the common law fraud claim.[64]

### c.    Individual Defendants

An instruction on falsity, materiality, and scienter with respect to
Vivendi would be unfairly prejudicial to Jean-Marie Messier and Guillaume
Hannezo, against whom the jury made no such findings.  Accordingly, I severed
Messier and Hannezo when I granted collateral estoppel against Vivendi.[65]

### d.    Inflation Rates

Vivendi argues that plaintiffs selective use of collateral estoppel is
unfair because they are cherry-picking the most favorable jury findings.  For
example, plaintiffs do not seek collateral estoppel for the jury's determination of
the daily inflation rates of Vivendi ADSs.

Collateral estoppel is, by nature, a selective doctrine.[66]  Although it is
an interesting question whether collateral estoppel *could* be invoked with respect to

---

[64]    *See* 3/7/12 Tr. at 11:25-12:1 ("MR. CALHOUN: I can tell you right
now we will not pursue the state law fraud claim.").

[65]    *See id.* at 12:3-4 ("THE COURT: . . .  For this trial the individual
defendants would be severed."); 3/15/12 Order [Docket No. 222].

[66]    *See In re Microsoft Corp. Antitrust Litig.*, 232 F. Supp. 2d 534, 545
(D. Md. 2002) (rejecting a similar "cherry-picking" complaint as "merely a
challenge to the doctrine of non-mutual offensive collateral estoppel"), *rev'd on
other grounds*, 355 F.3d 322 (4th Cir. 2004).

the jury's verdict on inflation rates, plaintiffs are not obligated to invoke every plausible ground for collateral estoppel, and this is not a justification for denying plaintiffs' request for collateral estoppel.

## V.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment on the grounds of collateral estoppel is granted in part and denied in part, defendants' motion for partial summary judgment against all plaintiffs is denied, and defendants' motion for reconsideration is denied.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            April 11, 2012

-24-

**- Appearances -**

**For Plaintiffs:**

Maureen Patricia Reid, Esq.
Baker Botts LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 408-2521

Michael Calhoon, Esq.
R. Stan Mortenson, Esq.
Alexandra M. Walsh, Esq.
Bryan Henry Parr, Esq.
Evan J. Werbel, Esq.
Julie B. Rubenstein, Esq.
Richard P. Sobiecki, Esq.
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 639-7700

**For Defendants Vivendi Universal, S.A. and Universal Studios, Inc.:**

Daniel Slifkin, Esq.
Paul C. Saunders, Esq.
Timothy Gray Cameron, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019
(212) 474-1000

Penny Packard Reid, Esq.
James W. Quinn, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue, 25th Fl.
New York, New York 10153
(212) 310-8000

**For Defendant Jean-Marie Messier:**

Jennifer Hurley McGay, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, New York 10022
(212) 705-7000

Michael J. Malone, Esq.
King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2186

**For Defendant Guillaume Hannezo:**

Martin L. Perschetz, Esq.
Michael Everett Swartz, Esq.
Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022
(212) 756-2247