UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIBERTY MEDIA CORPORATION, LMC CAPITAL LLC, LIBERTY PROGRAMMING COMPANY LLC, LMC USA VI, INC., LMC USA VII, INC., LMC USA VIII, INC., LMC USA X, INC., LIBERTY HSN LLC HOLDINGS, INC., and LIBERTY MEDIA INTERNATIONAL, INC.<br><br>        Plaintiffs,<br>  v.<br><br>VIVENDI UNIVERSAL, S.A., and UNIVERSAL STUDIOS, INC.<br><br>        Defendants. | 03 Civ. 2175 (SAS)<br><br>**LIBERTY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ENTRY OF FINAL JUDGMENT** |

Macey Reasoner Stokes
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-7869

R. Stan Mortenson
Michael L. Calhoon
Alexandra M. Walsh
Richard P. Sobiecki
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave, N.W.
Washington, D.C. 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

*Attorneys for Plaintiffs Liberty Media Corporation, LMC Capital LLC,
Liberty Programming Company LLC, LMC USA VI, Inc., LMC USA VII, Inc.,
LMC USA VIII, Inc., LMC USA X, Inc., Liberty HSN LLC Holdings, Inc.,
and Liberty Media International, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.    ENTRY OF FINAL JUDGMENT IS APPROPRIATE AT THIS TIME ......................... 2

II.   NEW YORK LAW REQUIRES THE JUDGMENT TO BE ENTERED IN
      EUROS, CONVERTED TO U.S. DOLLARS AT THE JUDGMENT-DAY
      RATE................................................................................................................ 4

III.  NEW YORK LAW ENTITLES LIBERTY TO PREJUDGMENT INTEREST
      AS A MATTER OF RIGHT ................................................................................... 6

IV.   JUDGMENT IN EUROS, WITH PREJUDGMENT INTEREST AT NINE
      PERCENT, IS ALSO APPROPRIATE IN LIGHT OF THE JURY'S SECTION
      10(b) VERDICT ................................................................................................. 9

      A.   Judgment in Euros Is Equally Sustainable on Liberty's Section 10(b)
           Claim........................................................................................................ 9

      B.   The Jury's Section 10(b) Finding Supports an Award of Prejudgment
           Interest at Nine Percent from December 16, 2001.................................... 13

CONCLUSION.................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adrian v. Town of Yorktown,
620 F.3d 104 (2d Cir. 2010)........................................................................7

Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,
106 F.3d 11 (2d Cir. 1997)..........................................................................4

Am. Fed. Grp., Ltd. v. Rothenberg,
No. 91 Civ. 7860 (THK) (SWK), 1998 WL 273034 (S.D.N.Y. May 28, 1998) ......................3

Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.,
618 F. Supp. 2d 280 (S.D.N.Y. 2009)...........................................................7

Competex, S.A. v. LaBow,
783 F.2d 333 (2d Cir. 1986)................................................................4, 11, 12

CSI Inv. Partners II, L.P. v. Cendant Corp.,
507 F. Supp. 2d 384 (S.D.N.Y. 2007)...........................................................7

Davenport v. Martin,
771 N.Y.S.2d 460 (N.Y. App. Div. 2004) .......................................................15

Dynamic Cassette Int'l Ltd. v. Mike Lopez & Assocs., Inc.,
923 F. Supp. 8 (E.D.N.Y. 1996) ..................................................................5

Garden City Boxing Club, Inc. v. Perez,
No. 05CV3713 (FP) (CLP), 2006 WL 2265039 (E.D.N.Y. Aug. 8, 2006) ............................17

Gibbs & Soell, Inc. v. Armstrong World Indus., Inc.,
No. 04 Civ. 5103 (HB), 2005 WL 615688 (S.D.N.Y. Mar. 17, 2005) ....................................8

Grubb v. FDIC,
833 F.2d 222 (10th Cir. 1987) ....................................................................3

Gussack Realty Co. v. Xerox Corp.,
224 F.3d 85 (2d Cir. 2000)..........................................................................7

Heinold Hog Mkt., Inc. v. McCoy,
817 F.2d 81 (10th Cir. 1987) .......................................................................2

Hicks v. Guinness,
269 U.S. 71 (1925)...................................................................................12

*Hoppe v. Russo-Asiatic Bank*,
　235 N.Y. 37 (N.Y. 1923) ...........................................................................12

*Hosmer v. Distler*,
　541 N.Y.S.2d 650 (N.Y. App. Div. 1989) ................................................9

*In re Crazy Eddie Sec. Litig.*,
　948 F. Supp. 1154 (E.D.N.Y. 1996) ........................................................17

*In re Livent, Inc. Noteholders Sec. Litig.*,
　360 F. Supp. 2d 568 (S.D.N.Y. 2005).........................................14, 15, 18

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
　Nos. 00 Civ. 1898 (SAS), 04 Civ. 3417 (SAS), 2010 WL 1924708
　(S.D.N.Y. May 12, 2010)............................................................................7

*In re Oil Spill by the Amoco Cadiz*,
　954 F.2d 1279 (7th Cir. 1992) ........................................................9, 10, 11

*In re Vivendi Universal, S.A. Sec. Litig.*,
　--- F.R.D. ---, No. 02 Civ. 5571 (SAS), 2012 WL 2829556
　(S.D.N.Y. July 5, 2012) ...............................................................13, 14, 16

*Indep. Bulk Transp., Inc. v. Vessel "Morania Abaco,"*
　676 F.2d 23 (2d Cir. 1982)........................................................................18

*Jones v. UNUM Life Ins. Co.*,
　223 F.3d 130 (2d Cir. 2000).........................................................14, 16, 17

*Katcher v. Am. Express Co.*,
　94 N.J.L. 165 (1920) .................................................................................12

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
　---F. Supp. 2d ---, No. 03 Civ. 2175 (SAS), 2012 WL 1203825
　(S.D.N.Y. Apr. 11, 2012)...........................................................................18

*Mallis v. Bankers Trust Co.*,
　717 F.2d 683 (2d Cir. 1983).....................................................................15

*Marfia v. T.C. Ziraat Bankasi*,
　147 F.3d 83 (2d Cir. 1998)..........................................................................6

*Mitsui & Co. v. Oceantrawl Corp.*,
　906 F. Supp. 202 (S.D.N.Y. 1995).......................................................9, 11

*N.Y. Marine & Gen. Ins. Co. v. Tradeline*,
　266 F.3d 112 (2d Cir. 2001)......................................................................14

*Olcott v. Del. Flood Co.*,
   76 F.3d 1538 (10th Cir. 1996) ............................................................3

*Schwimmer v. Allstate Ins. Co.*,
   176 F.3d 648 (2d Cir. 1999)..............................................................6

*Sea-Roy Corp. v. Parts R Parts, Inc.*,
   173 F.3d 851, Nos. 98-1028, 98-1546, 1999 WL 111281 (4th Cir. Mar. 4, 1999) ................11

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996)...............................................13, 15, 16

*SEC v. Musella*,
   748 F. Supp. 1028 (S.D.N.Y. 1989) ...................................................18

*SEC v. Platforms Wireless Int'l Corp.*,
   617 F.3d 1072 (9th Cir. 2010) ..........................................................16

*Serv. Employees Int'l Union v. Stone Park Assoc., LLC*,
   326 F. Supp. 2d 550 (S.D.N.Y. 2004)...............................................17

*Shaw, Savill, Albion & Co. v. The Fredericksburg*,
   189 F.2d 952 (2d Cir. 1951)..............................................................10

*Simonoff v. Granite City Nat'l Bank*,
   279 Ill. 248 (1917) .............................................................................12

*Strobl v. N.Y. Mercantile Exch.*,
   590 F. Supp. 875 (S.D.N.Y. 1984) ...................................................18

*Tropp v. Conair Corp.*,
   No. 08-cv-4446 (ENV) (RLM), 2011 WL 3511001 (E.D.N.Y. Aug. 10, 2011) ...................3

*U.S. Fire Ins. Co. v. Fed. Ins. Co.*,
   858 F.2d 882 (2d Cir. 1988)................................................................8

*United States v. Doe*,
   170 F.3d 223 (1st Cir. 1999).............................................................2

*United States v. Nysco Labs., Inc.*,
   318 F.2d 817 (2d Cir. 1963)...............................................................2

*Vishipco Line v. Chase Manhattan Bank, N.A.*,
   660 F.2d 854 (2d Cir. 1981)...............................................................4

*Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*,
   737 F.2d 150 (2d Cir. 1984)..............................................................11

*Weiss v. La Suisse, Société D'Assurances Sur La Vie,*
   293 F. Supp. 2d 397 (S.D.N.Y. 2003)...................................................................6

*Wickham Contracting Co. v. Local Union No. 3, IBEW,*
   955 F.2d 831 (2d Cir. 1992)..........................................................................13

*Wilson v. Great Am. Indus., Inc.,*
   979 F.2d 924 (2d Cir. 1992)..........................................................................13

STATUTES

735 Ill. Comp. Stat. Ann. 5/12-637 (West 1991)..........................................12

N.J. Stat. Ann. § 2A:49A-8 (West 1993)......................................................12

N.Y. C.P.L.R. § 5001 (McKinney 2007)....................................................7, 8

N.Y. C.P.L.R. § 5002 (McKinney 2007).................................................7, 8, 9

N.Y. C.P.L.R. § 5004 (McKinney 2007)..............................................7, 8, 15

N.Y. Jud. Law § 27(b) (McKinney 2002).........................................4, 5, 6, 12

RULES

Fed. R. Civ. P. 54(b)........................................................................................4

Fed. R. Civ. P. 58(b)(2)...............................................................................2, 3

Fed. R. Civ. P. 62(d).......................................................................................3

OTHER AUTHORITIES

53A Am. Jur. 2d Money § 75 (2012).............................................................11

2 Fed. Proc., L. Ed. § 3:163 (2012).................................................................4

Restatement (Third) of Foreign Relations Law § 823 ...................10, 11, 12

Revision Comment to SEC Rule of Practice 600, 60 Fed. Reg. 32738 (June 23, 1995)..............16

David D. Siegel, N.Y. Practice § 411 (5th ed. 2012)......................................9

Unif. Foreign-Money Claims Act, 13(2) U.L.A. 13 (1989) ..........................12

Pursuant to Federal Rule of Civil Procedure 58(d), Plaintiffs Liberty Media Corporation *et al*. (collectively, "Liberty") respectfully submit this memorandum of law in support of their Motion for Entry of Final Judgment on the jury verdict rendered on June 25, 2012.

## INTRODUCTION

The jury in this case rendered its unanimous verdict on June 25, 2012, finding Vivendi liable for breach of warranty under New York law and for violating Section 10(b) of the Securities Exchange Act of 1934. Vivendi has contended, without citation to authority, that "no judgment should be entered for Liberty in this action until after the Court issues a final judgment in the Class Action." *See* Mem. of L. in Supp. of Defs.' Renewed Mot. for J. as Matter of L. Pursuant to Rule 50(b), or, in the Alternative, for a New Trial Pursuant to Rule 59 at 40 (Dkt. No. 258) ("Vivendi's motion" or "Mot."). Liberty's case, however, is a separate, independent action from the Class Action, and the jury's verdict has decided all factual issues necessary to enter judgment in Liberty's favor. Vivendi's concern that its appeal from the judgment in Liberty's case could occur before its appeal from the Class case provides no basis for delaying entry of judgment, given Liberty's right to prompt entry under Federal Rule of Civil Procedure 58(b)(2) and the fact that Liberty's claims have been pending for nearly a decade. Vivendi's concern about the relative timing of the two potential appeals is logically and more properly addressed to the Second Circuit once an appeal has actually been filed.

To enter judgment, the Court must address issues of currency conversion and prejudgment interest. New York law governs these issues for Liberty's breach of warranty claim. That law requires, by statute, that judgment be entered in euros, converted to U.S. dollars at the conversion rate prevailing on the judgment day. New York statutory law also mandates an award of prejudgment interest to Liberty at the rate of nine percent per annum. A judgment in euros, with prejudgment interest at nine percent, is also warranted given the jury's finding for

Liberty on its Section 10(b) claim.

## ARGUMENT

## I.      ENTRY OF FINAL JUDGMENT IS APPROPRIATE AT THIS TIME

Because the jury's verdict fully resolved all open issues related to Liberty's claims, final judgment should be entered on the verdict.  *See* Fed. R. Civ. P. 58(b)(2)(A) ("Subject to Rule 54(b), the court must promptly approve the form of the judgment, which the clerk must promptly enter, when the jury returns a special verdict or a general verdict with answers to written questions.").  Vivendi cites no authority that would authorize, much less compel, delaying entry of judgment based on the Class Action, which is separate and distinct from Liberty's case and to which Liberty is not a party.

Vivendi's only ground for seeking delay is its concern that, if judgment is entered now, an appeal could be heard and decided prior to an appeal of the Class Action, in which Vivendi plans to challenge the Class verdict upon which the collateral estoppel order in Liberty's case is based.  *See* Mot. at 40.  Vivendi's professed concerns relate to the relative timing of two appeals that have not even been filed, and to the order in which the Second Circuit should hear those potential appeals.  *See id.*  Such concerns are appropriately raised, after an appeal is filed, to the Second Circuit, which has various tools available to address them.  *See, e.g.*, *Heinold Hog Mkt., Inc. v. McCoy*, 817 F.2d 81, 82–83 (10th Cir. 1987) (noting that the court held appeal in abeyance pending appeal of related state matter); *United States v. Nysco Labs., Inc.*, 318 F.2d 817, 818 (2d Cir. 1963) (per curiam) (affirming judgment based on res judicata despite pendency of appeal of companion case, but noting that parties could move for relief if companion case were reversed on appeal); *United States v. Doe*, 170 F.3d 223, 226 (1st Cir. 1999) (granting defendant leave to move to reopen appeal should ruling in companion case be reversed on appeal).  Vivendi's stated concerns are *not* grounds for depriving Liberty of its right to prompt

entry of judgment by this Court under Rule 58(b)(2). *See* Fed. R. Civ. P. 58(b)(2)(A); *cf. Tropp v. Conair Corp.*, No. 08-cv-4446 (ENV) (RLM), 2011 WL 3511001, at *3 (E.D.N.Y. Aug. 10, 2011) (directing entry of judgment on collateral estoppel grounds despite pendency of appeal in related case, and noting that plaintiff could seek relief from that final judgment under Federal Rule of Civil Procedure 60(b)(5) if the related case were reversed on appeal).

In contrast to the concerns Vivendi raises, Liberty's interest in obtaining a judgment without delay is real and significant. The Merger Agreement, including the warranties that Vivendi has now been found to have breached, was signed nearly 11 years ago. Liberty filed its complaint seeking redress for that breach and for Vivendi's fraud more than nine years ago. After nearly a decade of delays, Liberty's claims were finally heard and resolved in its favor. Vivendi should not be permitted to further delay the resolution of these proceedings.

Moreover, given the size of the verdict, entry of judgment is necessary to protect Liberty against "the inherent risks, such as subsequent insolvency of the appellant, associated with the delay in enforcement of the district court's judgment while the appeal proceeds," by requiring Vivendi to post a supersedeas bond sufficient to secure the judgment. *Am. Fed. Grp., Ltd. v. Rothenberg*, No. 91 Civ. 7860 (THK) (SWK), 1998 WL 273034, at *1 (S.D.N.Y. May 28, 1998) (internal quotation marks omitted); *see* Fed. R. Civ. P. 62(d) (requiring an appellant to post a supersedeas bond to stay execution of judgment pending appeal); *see also Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1559 (10th Cir. 1996) ("The purpose of requiring a supersedeas bond pending appeal 'is to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency.'" (quoting *Grubb v. FDIC*, 833 F.2d 222, 226 (10th Cir. 1987))). Entry of a final judgment (which would allow the protection of a supersedeas bond) will ensure that Liberty's rights are protected regardless of whether the Second Circuit subsequently chooses

to coordinate the timing of the potential appeals from this case and the Class Action.

Federal Rule of Civil Procedure 54(b), which applies to judgments on multiple claims or involving multiple parties, provides an instructive analogue in this situation.  Under that rule, it is appropriate to enter final judgment as to one or more, but fewer than all, claims or parties where "there is no just reason for delay."  Fed. R. Civ. P. 54(b).  As the Second Circuit has held, there is no "just reason for delay" where, as here, "a plaintiff might be prejudiced by a delay in recovering a monetary award."  *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997).  In determining whether to enter judgment pursuant to Rule 54(b), courts take into account "economic and solvency considerations."  2 Fed. Proc., L. Ed. § 3:163 (2012).  Those same considerations are undoubtedly relevant and militate strongly in favor of promptly entering final judgment here.

## II.   NEW YORK LAW REQUIRES THE JUDGMENT TO BE ENTERED IN EUROS, CONVERTED TO U.S. DOLLARS AT THE JUDGMENT-DAY RATE

New York law governs the currency conversion of the damages awarded for Liberty's breach of warranty claim.  *See Vishipco Line v. Chase Manhattan Bank, N.A.*, 660 F.2d 854, 865 (2d Cir. 1981) ("As a federal court sitting in diversity, we must apply the currency-conversion rule employed by the courts of New York . . . ."); *Competex, S.A. v. LaBow*, 783 F.2d 333, 334 (2d Cir. 1986) ("Because determination of the date on which to convert a foreign currency debt into dollars is a substantive question, [the trial judge] was compelled to apply New York law.") (citation omitted).  By statute, that law unambiguously requires that judgment be entered in euros, and converted to dollars at the conversion rate prevailing on the date of judgment.  *See* N.Y. Jud. Law § 27(b) (McKinney 2002).  Section 27(b) codifies what is known as the

"judgment-day rule." *Dynamic Cassette Int'l Ltd. v. Mike Lopez & Assocs., Inc.*, 923 F. Supp. 8, 11–12 (E.D.N.Y. 1996).[1]  It provides:

> In any case in which the cause of action is based upon an obligation denominated in a currency other than currency of the United States, a court *shall render or enter a judgment or decree in the foreign currency* of the underlying obligation. Such judgment or decree shall be converted into currency of the United States *at the rate of exchange prevailing on the date of entry of the judgment* or decree.

N.Y. Jud. Law § 27(b) (emphases added).

Section 27(b) undoubtedly applies here.  Although the Merger Agreement contemplated Liberty's receipt of Vivendi ADSs, Liberty's breach of warranty claim is based upon Liberty's receipt under that Agreement of Vivendi ordinary shares; those shares were traded on the Paris Bourse and *priced in euros*.  *See, e.g.*, Trial Tr. (6/19/12) at 2533:8–10, 2578:19–20 (Silber).  As a result of Vivendi's breach of its contractual warranties, Liberty received Vivendi shares with a market value, in euros, that was artificially inflated by Vivendi's public misstatements and omissions.  As reflected in the Court's instructions, Liberty sought to recover as damages "the difference between the market price of the Vivendi shares on the date of the Merger Agreement and their true value at the time the parties entered into that Agreement."  Ex. 1, Jury Charge at 30.[2]  Because "the market price of the Vivendi shares on the date of the Merger Agreement" was denominated in euros, the jury was asked to, and did, award Liberty damages for Vivendi's breaches in euros.  Ex. 2, Special Verdict Form at 5.  Consequently, Liberty's breach of warranty

---

[1] Section 27(b), enacted in 1987, modified the prior New York common-law rule, referred to as the "breach-day rule," which directed courts to apply the conversion rate on the date of breach or injury.  *Dynamic Cassette*, 923 F. Supp. at 12 ("Section 27(b) now explicitly provides that a judgment entered in a foreign currency be converted into United States dollars at the exchange rate prevailing on the date of judgment.").

[2] Defined terms have the meaning specified herein or in the supporting Declaration of Julie B. Rubenstein, Esq. ("Rubenstein Declaration").  Citations to "Ex." refer to the corresponding exhibits attached to the Rubenstein Declaration.

cause of action is based upon euro-denominated Vivendi shares within the meaning of Section 27(b).  Vivendi conceded as much when it failed to object to a verdict form directing the jury to award damages on Liberty's breach of warranty claim, if any, in euros.  *See* Ex. 2, Special Verdict Form at 5; Trial Tr. (6/19/12) at 2738:4–11.

As applied here, Section 27(b) mandates that the Court enter judgment on the jury's €765 million damage award in euros, converted into dollars at the judgment-day exchange rate.  N.Y. Jud. Law § 27(b); *cf., e.g.*, *Weiss v. La Suisse, Société D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 409 (S.D.N.Y. 2003) ("In accordance with the laws of New York, any judgment entered in Plaintiffs' favor will be converted from Swiss francs to U.S. dollars at the prevailing exchange rate as of the date of judgment." (citing N.Y. Jud. Law § 27(b))).

## III.   NEW YORK LAW ENTITLES LIBERTY TO PREJUDGMENT INTEREST AS A MATTER OF RIGHT

Like the issue of conversion, the issue of prejudgment interest on Liberty's breach of warranty claim is governed by New York law.  *See Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999) (holding that because "[t]he awarding of prejudgment interest is considered a question of substantive law," "state law applies to calculation of prejudgment interest on supplemental state law claims" (citing *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998))).[3]

By statute, New York law mandates that a plaintiff receive prejudgment interest at a rate of nine percent per annum on an award of damages for breach of warranty.  Section 5001 of the New York Civil Practice Law and Rules ("CPLR") provides that "[i]nterest [to verdict] shall be

---

[3] *See also* Ex. 3, Merger Agreement § 12.10 ("Governing Law") ("This Agreement shall be governed by and construed in accordance with the laws of the State of New York without giving effect to the conflicts of law principles thereof, except to the extent the laws of the State of Delaware are mandatorily applicable to the Merger.").

recovered upon a sum awarded because of a breach of performance of a contract."  N.Y.

C.P.L.R. § 5001(a) (McKinney 2007).  Section 5002 of the CPLR then provides that in all cases,

"[i]nterest shall be recovered upon the total sum awarded, including interest to verdict, . . . from

the date the verdict was rendered . . . to the date of entry of final judgment."  *Id.* § 5002.  Section

5004 provides that "[i]nterest shall be at the rate of nine per centum per annum, except where

otherwise provided by statute."  *Id.* § 5004.

      This Court and others have consistently recognized the mandatory nature of these

provisions:  "Section 5001 makes pre-verdict interest mandatory where the underlying claims are

based upon contract or property law. . . .  Section 5002 makes post-verdict interest mandatory in

all cases. . . . The interest rate for both pre-verdict and post-verdict interest is set at nine percent

per annum and is not compounded."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab.*

*Litig.*, Nos. 00 Civ. 1898 (SAS), 04 Civ. 3417 (SAS), 2010 WL 1924708, at *1 (S.D.N.Y. May

12, 2010) (footnotes omitted); *accord Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d

Cir. 2000) (holding that Section 5001 "imposes an affirmative mandate on trial courts; they have

no discretion not to award prejudgment interest under New York law"); *Adrian v. Town of*

*Yorktown*, 620 F.3d 104, 107 (2d Cir. 2010) (holding that "[u]nder New York law, post-verdict

prejudgment interest is mandatory" (citing N.Y. C.P.L.R. § 5002)).

      New York law also makes clear that pre-verdict prejudgment interest runs from the

"earliest ascertainable date the cause of action existed" until the date on which the jury rendered

its verdict.  N.Y. C.P.L.R. § 5001(b).  In cases of contractual breach, the "earliest ascertainable

date the cause of action existed" is the date the contract was breached.  *See, e.g.*, *Aristocrat*

*Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 618 F. Supp. 2d 280, 310 (S.D.N.Y. 2009)

(accruing prejudgment interest under Section 5001(b) as of the date of breach); *CSI Inv. Partners*

*II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 418–19 (S.D.N.Y. 2007) (holding that, under Section 5001(b), prejudgment interest began to run on "the first ascertainable date of Cendant's breach"); *Gibbs & Soell, Inc. v. Armstrong World Indus., Inc.*, No. 04 Civ. 5103 (HB), 2005 WL 615688, at *6 (S.D.N.Y. Mar. 17, 2005) ("Under New York Law, a plaintiff that prevails on a claim for breach of contract is also entitled as a matter of right to prejudgment interest *from the date of breach* until the entry of final judgment.") (emphasis added).

Here, the "earliest ascertainable date" of Vivendi's breach of the Merger Agreement warranties, and thus of Liberty's cause of action for breach, is December 16, 2001.  That is the date when Vivendi executed the Merger Agreement containing the warranties that were "false when made by Vivendi."  Ex. 2, Special Verdict Form at 1, 4 (making this finding as to the warranties in Sections 3.07 and 3.12 of the Merger Agreement); *see* Ex. 1, Jury Charge at 21 (instructing the jury that the warranties in Sections 3.08 and 3.11 were "false at the time the Merger Agreement was signed").  Therefore, prejudgment interest on Liberty's claim for the pre-verdict period accrues from December 16, 2001 to June 25, 2012, at the rate of nine percent per annum on the jury's damages award.  N.Y. C.P.L.R. §§ 5001, 5004.

Section 5002 of the CPLR governs the calculation of interest from the date of the verdict until the "date of entry of final judgment."  *Id.* § 5002.  By its terms, that interest accrues not just on the jury's damages award, but on "the total sum awarded, *including interest to verdict*."  *Id.* (emphasis added).  Thus, from June 25, 2012 until the date of entry of final judgment, Liberty is entitled to interest at the rate of nine percent per annum on the "total sum" of the jury's damages award and the pre-verdict interest awarded under Section 5001.  *See U.S. Fire Ins. Co. v. Fed. Ins. Co.*, 858 F.2d 882, 889 (2d Cir. 1988) (holding that successful litigant was entitled to pre-verdict interest as well as "interest from the date of decision to the date of entry of the judgment

'upon the total sum awarded, including interest to . . . decision'" (quoting N.Y. C.P.L.R.

§ 5002)); *Hosmer v. Distler*, 541 N.Y.S.2d 650, 652 (N.Y. App. Div. 1989) (holding that under

Section 5002, post-verdict interest "is authorized on 'the total sum awarded, including interest to

verdict'" (quoting N.Y. C.P.L.R. § 5002)); *see also* David D. Siegel, N.Y. Practice § 411 (5th ed.

2012) ("[CPLR 5002] contemplates that the whole of the verdict or decision, including the

[CPLR 5001] interest awarded, will be added together, and that [CPLR 5002] interest will then

run on that sum until a judgment is formally entered . . . .").

In sum, New York law mandates that the final judgment in this case award Liberty (1)

interest on the jury's damages award from December 16, 2001 to June 25, 2012 at a rate of nine

percent per annum simple interest; and (2) interest at the same rate from June 25, 2012 to the

date of judgment on the sum of the damages award and the interest awarded for the pre-verdict

period.[4]

## IV.    JUDGMENT IN EUROS, WITH PREJUDGMENT INTEREST AT NINE PERCENT, IS ALSO APPROPRIATE IN LIGHT OF THE JURY'S SECTION 10(b) VERDICT

### A.    Judgment in Euros Is Equally Sustainable on Liberty's Section 10(b) Claim

As various courts have recognized, judgments in foreign currency are appropriate where,

as here, the parties contracted or dealt in foreign currency or in obligations or assets denominated

in such currency.  *See, e.g.*, *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1328 (7th Cir.

1992) (per curiam) ("Judgment in a foreign currency is especially attractive when the

commercial activity took place in that currency."); *Mitsui & Co. v. Oceantrawl Corp.*, 906 F.

Supp. 202, 204 (S.D.N.Y. 1995) ("Entry of judgment in the currency of the parties' transactions

---

[4] The exact calculation of this mandatory prejudgment interest depends on the date of final
judgment, the currency in which the judgment is awarded, and, if the judgment is in or converted
to dollars, the conversion date.  Once these factors are established by the Court, Liberty can
perform these calculations and submit them to the Court.

accords with principles of fairness and with the goal of making injured parties whole because it provides them with payment in the currency for which they bargained.") (citation omitted); *see also* Restatement (Third) of Foreign Relations Law § 823 cmt. b (1987) (favoring entry of judgment in foreign currency when requested by judgment creditor and when doing so would best accomplish Restatement's objectives of making injured party whole and avoiding rewarding debtor who has delayed in carrying out its obligation). As one court explained, entry of a judgment for damages in "the currency the parties themselves selected for their dealings" makes sense because it is "the currency in which the loss is felt." *In re Oil Spill*, 954 F.2d at 1328.

Here, Liberty received euro-denominated Vivendi shares when the Merger Agreement closed. Those shares traded on the Paris Bourse and were priced in euros. As damages for Vivendi's fraud under Section 10(b), the jury awarded Liberty "the difference between the market value of Vivendi's stock on December 16, 2001, and the price those shares would have cost on that date if there had been no misconduct." Ex. 1, Jury Charge at 31. Because both sides of that equation are necessarily denominated in euros—the shares' market value on the Paris Bourse on December 16, 2001 and their hypothetical price on that exchange in the absence of fraud—the jury awarded Liberty damages in euros. Ex. 2, Special Verdict Form at 7. Thus, there is no question that the euro is the currency in which Liberty "b[o]r[e] risks," *In re Oil Spill*, 954 F.2d at 1330, and "the currency in which [Liberty's] loss [wa]s felt," *id.* at 1328. Vivendi tacitly conceded as much by not objecting to a verdict form that asked the jury to award any Section 10(b) damages in euros. *See id.* at 1329 (holding that the district court should have entered judgment in the currency in which it "computed the loss").

Liberty acknowledges that earlier federal cases held that foreign-currency judgments were prohibited. *See Shaw, Savill, Albion & Co. v. The Fredericksburg*, 189 F.2d 952, 954 (2d

Cir. 1951) ("It is well settled that a money judgment by an American court must be in American currency.").  However, more recently, several courts, including those in this Circuit, have called that early prohibition into question and even declined to apply it.  In 1986, the Second Circuit cast serious doubt upon the "assumption" that "American judgments must be entered in dollars," noting that this assumption was based on outdated notions of sovereignty as well as a now-repealed section of the Coinage Act of 1792, thought to require dollar-denominated judgments. *Competex*, 783 F.2d at 337 & n.9.  Given the evolution of the law, the Second Circuit opined in *Competex* that the "assumption" barring foreign-currency judgments "deserve[d] reexamination."  *Id.*  In fact, two years prior to *Competex*, the Second Circuit affirmed confirmation of an arbitration award partly in U.S. dollars and partly in pounds sterling. *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 155 (2d Cir. 1984).

More recently, a court in the Southern District of New York entered a judgment in yen, the currency in which the parties transacted, because the court was "persuaded that were the Second Circuit faced with the question today, it would hold that American courts may enter judgments in foreign currency."  *Mitsui*, 906 F. Supp. at 204.  Other circuits have similarly rejected the notion that judgments must be rendered in U.S. dollars.  *See, e.g.*, *In re Oil Spill*, 954 F.2d at 1328 ("There is now no bar to judgment in the appropriate [foreign] currency."); *Sea-Roy Corp. v. Parts R Parts, Inc.*, 173 F.3d 851, Nos. 98-1028, 98-1546, 1999 WL 111281, at *4 (4th Cir. Mar. 4, 1999) (upholding jury instruction to award damages in deutschemarks, the currency of the transactions and the loss, rather than dollars).[5]  Here, entry of judgment in euros is

---

[5] *See also* Restatement (Third) of Foreign Relations Law § 823(1) (stating that federal courts "are not precluded from giving judgment in the currency in which the obligation is denominated or the loss was incurred"); 53A Am. Jur. 2d Money § 75 (2012) ("Modern cases . . . support the view that United States courts are no longer prohibited from entering judgment in a foreign currency, following the repeal of the statute [i.e., the Coinage Act] formerly thought to impose

appropriate and would best accomplish the objective of making Liberty whole for the fraudulently inflated, euro-denominated Vivendi shares it received.

If the Court determines that judgment on the Section 10(b) verdict should be entered in U.S. dollars, conversion of the jury's award should be calculated as of the judgment date. While the Supreme Court has applied the breach-day rule where performance was due in the United States or where the cause of action arose under U.S. law, *see Hicks v. Guinness*, 269 U.S. 71, 80 (1925), the modern trend recognizes the benefits of the judgment-day rule. *See, e.g.*, *Competex*, 783 F.2d at 338–39 (citing the judgment-day rule with approval as "a neutral conversion rule" because it replicates "the consequence of holding an obligation in [the foreign currency]"); Restatement (Third) of Foreign Relations § 823 cmt. c (stating that where, as here, "the foreign currency has appreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of judgment or the date of payment"). Liberty believes the Supreme Court would not mandate application of the breach-day rule if presented with the issue today.[6]  In any event, the evolving state of federal law on this issue does not affect the

---

this requirement.") (footnotes omitted).  The passage of the Uniform Foreign-Money Claims Act, which allows for judgments stated in foreign currency and which has now been adopted by a near-majority of states, is further evidence that the prohibition against such judgments has crumbled.  *See* Unif. Foreign-Money Claims Act, 13(2) U.L.A. 13 (1989); *id.* § 7, 13(2) U.L.A. at 26.

[6] Indeed, *Hicks* based its application of the breach-day rule on precedent from other jurisdictions that have abandoned that rule in the nearly ninety years since *Hicks* was decided.  *Compare Hoppe v. Russo-Asiatic Bank*, 235 N.Y. 37 (N.Y. 1923) (cited in *Hicks*, 269 U.S. at 81), *with* N.Y. Jud. Law § 27(b) (McKinney 2002) (adopting the judgment-day rule); *compare Katcher v. Am. Express Co.*, 94 N.J.L. 165 (1920) (cited in *Hicks*, 269 U.S. at 81), *with* N.J. Stat. Ann. § 2A:49A-8 (West 1993) (adopting Uniform Foreign-Money Claims Act's payment-day rule); *compare Simonoff v. Granite City Nat'l Bank*, 279 Ill. 248 (1917) (cited in *Hicks*, 269 U.S. at 81), *with* 735 Ill. Comp. Stat. Ann. 5/12-637 (West 1991) (adopting Uniform Foreign-Money Claims Act's payment-day rule); *compare Hicks*, 269 U.S. at 80–81 (supporting its selection of the breach-day rule as consistent with English law as established by the House of Lords), *with Competex*, 783 F.2d at 338 & n.10 (noting that the House of Lords has since adopted the payment-day rule).

conversion rate dictated by New York law for Liberty's breach of warranty claim.

**B.      The Jury's Section 10(b) Finding Supports an Award of Prejudgment Interest at Nine Percent from December 16, 2001**

Unlike the mandatory prejudgment interest for Liberty's breach of warranty claim, the question of whether to award prejudgment interest based on Liberty's Section 10(b) claim lies within the Court's discretion. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996). In exercising this discretion, courts in the Second Circuit consider: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Id.* (quoting *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 833–34 (2d Cir. 1992)) (internal quotation marks omitted).

The Court has previously considered these factors as they relate to the plaintiffs in the Class Action against Vivendi. *See In re Vivendi Universal, S.A. Sec. Litig.*, --- F.R.D. ---, No. 02 Civ. 5571 (SAS), 2012 WL 2829556 (S.D.N.Y. July 5, 2012). In its opinion, the Court found that prejudgment interest should be awarded to those plaintiffs because they "have been deprived of the use of their funds for nearly ten years, and prejudgment interest is necessary to fully compensate them for their loss." *Id.* at *14. Because Liberty has similarly been deprived for over ten years of the difference between the market value of the Vivendi shares and the price those shares would have cost if Vivendi had not committed fraud, the Court's reasoning applies identically in this case and supports an award of prejudgment interest on Liberty's Section 10(b) claim.

This Court also has discretion as to the rate of interest to award and how often interest should be compounded. *See, e.g.*, *Wilson v. Great Am. Indus., Inc.*, 979 F.2d 924, 934 (2d Cir.

1992) (holding that district court acted within its discretion in awarding nine percent prejudgment interest, compounded annually, in federal securities fraud case).  In exercising this discretion, "the same considerations that inform the court's decision whether or not to award interest at all [described in *First Jersey Securities* above] should inform the court's choice of interest rate."  *Jones v. UNUM Life Ins. Co.,* 223 F.3d 130, 139 (2d Cir. 2000) (citations omitted).  In applying these factors, "[c]ourts within this Circuit have adopted a variety of approaches to determining the interest rate applicable to awards of prejudgment interest, since no federal statute governs which rate should apply to prejudgment interest awards."  *In re Livent, Inc. Noteholders Sec. Litig.*, 360 F. Supp. 2d 568, 571 (S.D.N.Y. 2005).

In its order granting prejudgment interest to the Class Plaintiffs, the Court awarded prejudgment interest at a rate based on the yield of a one-year Treasury note compounded annually.  *In re Vivendi*, 2012 WL 2829556, at *15–16 & n.90 (citing *N.Y. Marine & Gen. Ins. Co. v. Tradeline*, 266 F.3d 112, 131 (2d Cir. 2001), for the principle that prejudgment interest "generally should be measured by interest on short-term, risk-free obligations" such as one-year U.S. Treasury bills).  Liberty respectfully submits that important factual differences between the Class Action and Liberty's case warrant an award of prejudgment interest at a higher rate than awarded in the Class Action, equivalent to the nine percent rate that is mandated on Liberty's breach of warranty claim.  *See Jones*, 223 F.3d at 139 (holding that whether a Treasury-bill rate is appropriate "will depend on the circumstances of the individual case"); *In re Livent*, 360 F. Supp. 2d at 572 (noting that "[r]egardless of the interest rate used as a starting point by a court in evaluating a motion for prejudgment interest, the Second Circuit has made clear that" district courts are not limited to an award of the Treasury-bill rate (quoting *Jones*, 223 F.3d at 139)).

First, the Class Plaintiffs only asserted a claim under Section 10(b).  In contrast, Liberty's

claims include a breach of warranty claim under New York state law.  As explained above, the

New York legislature has determined that nine percent simple interest is the appropriate rate of

interest for Liberty's breach of warranty claim.  N.Y. C.P.L.R. § 5004 (McKinney 2007).[7]  It

would be anomalous to conclude that Liberty is entitled to a lower rate of prejudgment interest

on its Section 10(b) claim than on its breach of warranty claim, especially since the degree of

culpability required for securities fraud is higher than that for breach of warranty.[8]

Second, while the Class Plaintiffs were open-market purchasers of Vivendi securities,

Liberty directly contracted with Vivendi, obtaining Vivendi securities through a stock-for-stock

merger agreement.  Thus, while Vivendi did not directly benefit from the Class Plaintiffs'

purchases, it *did* directly benefit from Liberty's purchase, receiving valuable shares of USA

Networks and multiThématiques stock in exchange for the fraudulently-inflated Vivendi

securities.  In addition to depriving Liberty of its out-of-pocket damages for over ten years,

Vivendi has had full use of the assets purchased from Liberty (or the proceeds from the sale of

those assets) during that same period.

That distinction plainly warrants application of a higher interest rate in this case.  Failure

to apply a rate higher than the Treasury-bill rate would result in a tremendous windfall to

Vivendi, one obtained only as a result of its now-established fraud.  As the Second Circuit has

held, "where defendants have had the use of the money" obtained as a result of their wrongdoing,

---

[7] These same statutory provisions govern the award of prejudgment interest for state-law securities fraud claims analogous to Section 10(b) claims.  *See, e.g.*, *Davenport v. Martin*, 771 N.Y.S.2d 460, 460 (N.Y. App. Div. 2004) (holding that plaintiffs were entitled to prejudgment interest at the statutory nine percent rate in state securities fraud suit); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 694–95 (2d Cir. 1983) (same).

[8] *See First Jersey Sec.*, 101 F.3d at 1476–77 (affirming a rate higher than the Treasury-bill rate where the defendant engaged in federal securities fraud); *see also In re Livent*, 360 F. Supp. 2d at 573 (holding that an award of prejudgment interest at a nine percent rate was "fair and equitable under the circumstances" due to the "ample evidence of Defendants' egregious wrongdoing").

application of the "advantageous [Treasury-bill] rate would seem highly inappropriate." *First Jersey Sec.*, 101 F.3d at 1476–77; *see Jones*, 223 F.3d at 139 (holding that courts "need not limit the award of prejudgment interest to the rate at which the injured party would have lent money to the government"); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1099 (9th Cir. 2010) (stating that the Treasury-bill rate only "reflects the interest rate paid for *lending* money to the U.S. Government, not for *borrowing* money" (citing *First Jersey Sec.*, 101 F.3d at 1476–77)). Here, as in *First Jersey Securities*, the "remedial purpose" of Section 10(b) supports a higher interest rate than the Treasury-bill rate awarded in the Class Action. *See* 101 F.3d at 1476–77 (rejecting defendants' argument that the Treasury-bill rate of interest was appropriate).[9]

The direct benefits that Vivendi received through its fraud also justify a higher rate under the factors of compensation and fairness. *Id.* at 1476. In determining the appropriate prejudgment interest rate, the Court may take into account the rate of interest Vivendi would have had to pay if it had borrowed the money from Liberty. *Jones*, 223 F.3d at 139–40 (citations omitted). The SEC has noted that the IRS underpayment rate, which is substantially higher than the one-year Treasury-bill rate, "is a reasonable proxy for an unsecured loan rate" and therefore "approximates a typical [defendant's] cost of funds." Revision Comment to SEC Rule of Practice 600, 60 Fed. Reg. 32738, 32788 (June 23, 1995); *see First Jersey Sec.*, 101 F.3d at 1476 (noting that the IRS underpayment rate "reflects what it would have cost to borrow the money from the government"). Liberty recognizes that the Court found an award of the IRS large corporate underpayment rate, compounded daily, to be inappropriate in the Class Action. *See In re Vivendi Universal*, 2012 WL 2829556, at *16. But here, unlike in the Class, Vivendi directly

---

[9] While *First Jersey Securities* involved an enforcement action by the SEC, the court was applying the same factors that apply in this case. *See* 103 F.3d at 1476–77; *see also In re Vivendi*, 2012 WL 2829556, at *14 & nn.84–85 (recognizing the applicability of these factors to a private securities fraud action under Section 10(b)).

benefitted from Liberty's purchase of its fraudulently inflated stock.  It received what amounted to an involuntary loan of €765 million from Liberty.  Had Vivendi actually borrowed that money from Liberty, rather than obtaining it by fraud, Vivendi undoubtedly would have had to pay a far higher rate of interest than the Treasury-bill rate.  Liberty respectfully submits that the nine percent interest rate mandated for Liberty's breach of warranty claim is a reasonable proxy for this higher rate.

Third, as Vivendi repeatedly stressed throughout the trial, Liberty is a sophisticated investor.  It is therefore reasonable to assume that Liberty would have been able to obtain a higher rate of return than the return on a one-year Treasury bill had it not been fraudulently induced to invest its funds in Vivendi.  That distinction provides further support for a higher rate of interest than that awarded the Class, which is composed of investors with a broad spectrum of sophistication.  *See Jones*, 223 F.3d at 139 (holding that, in determining whether to award a higher rate of interest than the one-year Treasury-bill rate, courts can consider whether "plaintiff would have invested the money at some higher rate").

Adopting New York's nine percent interest rate, based on these distinguishing aspects of Liberty's case, would accord with "the 'common practice' among courts within the Second Circuit" to "grant interest at the rate of prejudgment interest under New York State law" when, as here, the applicable federal statute "is silent as to the amount of a pre-judgment interest rate." *Garden City Boxing Club, Inc. v. Perez*, No. 05CV3713 (FP) (CLP), 2006 WL 2265039, at *9 (E.D.N.Y. Aug. 8, 2006) (citing *Serv. Employees Int'l Union v. Stone Park Assoc., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004)); *see In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1167 (E.D.N.Y. 1996) ("Whether pre-judgment interest is awarded under federal or state law, federal courts have ordinarily looked to state law in determining the appropriate interest rate.").  Courts

in this Circuit have followed this approach in applying New York's nine percent prejudgment interest rate to damages awarded on federal securities law claims.  *See, e.g.*, *In re Livent*, 360 F. Supp. 2d at 572–73 (holding that "an award of prejudgment interest at the forum state rate of 9 percent" for plaintiffs' Section 11 claim was proper and rejecting defendants' argument for either the Treasury-bill rate or the IRS underpayment rate); *SEC v. Musella*, 748 F. Supp. 1028, 1043 (S.D.N.Y. 1989) (applying statutory nine percent rate to Section 10(b) and 14(e) claims, reasoning that "[a] district court sitting in New York may use the rate of interest used to calculate prejudgment interest under New York law in calculating prejudgment interest in federal securities law cases"), *aff'd*, 898 F.2d 138 (2d Cir. 1990).[10]

In calculating prejudgment interest under Section 10(b), the Court also has discretion in determining the date on which such interest should begin to accrue.  *See Indep. Bulk Transp., Inc. v. Vessel "Morania Abaco,"* 676 F.2d 23, 25 (2d Cir. 1982).  Just as prejudgment interest on Liberty's breach of warranty claim should accrue from December 16, 2001, prejudgment interest on Liberty's Section 10(b) claim should accrue from the same date, as that is the date Liberty purchased inflated Vivendi securities in reliance on Vivendi's fraudulent statements, as the jury found.  Ex. 2, Special Verdict Form at 6; *see also Liberty Media Corp. v. Vivendi Universal, S.A.*, ---F. Supp. 2d ---, No. 03 Civ. 2175 (SAS), 2012 WL 1203825, at *3–4 (S.D.N.Y. Apr. 11, 2012) (finding that the purchase occurred on December 16, 2001, the date on which "the binding obligation to effectuate the merger and the exchange for Vivendi securities occurred").

---

[10] *See also Strobl v. N.Y. Mercantile Exch.*, 590 F. Supp. 875, 882 (S.D.N.Y. 1984) (finding that in the absence of statutory directive or controlling case law, CPLR interest provisions as applied to state law claims "reasonably and equitably compensate plaintiff for the loss of the use of his money" relating to his Commodity Exchange Act claim), *aff'd*, 768 F.2d 22 (2d Cir. 1985).

Accordingly, judgment awarding prejudgment interest at nine percent from December 16, 2001 is appropriate based on the jury's Section 10(b) finding as well as its breach of warranty finding.

## CONCLUSION

For the foregoing reasons, Liberty respectfully submits that the Court should enter final judgment in euros, converted to U.S. dollars at the exchange rate applicable on the judgment date, and include an award of prejudgment interest on the damages award at nine percent simple interest from December 16, 2001 to June 25, 2012, as well as interest at the same rate from June 25, 2012 to the date of judgment on both the damages award and the interest awarded from December 16, 2001 to June 25, 2012.

Dated: September 11, 2012

/s/ Michael L. Calhoon

Macey Reasoner Stokes
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX  77002-4995
Telephone:  (713) 229-1234
Facsimile:  (713) 229-7869

R. Stan Mortenson
Michael L. Calhoon
Alexandra M. Walsh
Richard P. Sobiecki
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave, N.W.
Washington, D.C. 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

*Attorneys for Plaintiffs Liberty Media Corporation, LMC Capital LLC,*
*Liberty Programming Company LLC, LMC USA VI, Inc., LMC USA VII, Inc.,*
*LMC USA VIII, Inc., LMC USA X, Inc., Liberty HSN LLC Holdings, Inc.,*
*and Liberty Media International, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2012, a copy of the foregoing was served upon the following:

Paul C. Saunders, Esq.
Daniel Slifkin, Esq.
Timothy G. Cameron, Esq.
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

James W. Quinn, Esq.
Penny P. Reid, Esq.
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153

  /s/ Michael L. Calhoon
Michael L. Calhoon