**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LIBERTY MEDIA CORPORATION, LMC CAPITAL LLC, LIBERTY PROGRAMMING COMPANY LLC, LMC USA VI, INC., LMC USA VII, INC., LMC USA VIII, INC., LMC USA X, INC., LIBERTY HSN LLC HOLDINGS, INC., and LIBERTY MEDIA INTERNATIONAL, INC. <br><br> Plaintiffs, <br> v. <br><br> VIVENDI UNIVERSAL, S.A., and UNIVERSAL STUDIOS, INC. <br><br> Defendants. | 03 Civ. 2175 (SAS) <br><br><br> **LIBERTY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ENTRY OF FINAL JUDGMENT** |

Macey Reasoner Stokes
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-7869

R. Stan Mortenson
Michael L. Calhoon
Alexandra M. Walsh
Richard P. Sobiecki
BAKER BOTTS L.L.P.
1299 Pennsylvania Ave, N.W.
Washington, D.C. 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

*Attorneys for Plaintiffs Liberty Media Corporation, LMC Capital LLC,*
*Liberty Programming Company LLC, LMC USA VI, Inc., LMC USA VII, Inc.,*
*LMC USA VIII, Inc., LMC USA X, Inc., Liberty HSN LLC Holdings, Inc.,*
*and Liberty Media International, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.   VIVENDI'S ATTEMPT TO DELAY ENTRY OF JUDGMENT IS
     BASELESS ................................................................................................................ 1

II.  LIBERTY IS ENTITLED TO PREJUDGMENT INTEREST ......................................... 2

     A.   New York Law Applies and Mandates 9% Prejudgment Interest on
          Liberty's Breach of Warranty Claim ............................................................... 2

     B.   Prejudgment Interest at 9% Would Also Be Appropriate on Liberty's
          Section 10(b) Claim ....................................................................................... 4

III. JUDGMENT SHOULD BE ENTERED IN EUROS OR CONVERTED
     TO DOLLARS AT THE JUDGMENT-DAY RATE ........................................................ 8

     A.   New York Law Governs Conversion on Liberty's Breach of Warranty
          Claim .............................................................................................................. 8

     B.   Judgment on Liberty's Section 10(b) Claim Should Be Entered in Euros
          or Converted at the Judgment-Day Rate ........................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alfano v. Cigna Life Ins. Co. of New York*,
No. 07-cv-9661, 2009 WL 890626 (S.D.N.Y. Apr. 2, 2009) ...................................................5

*Competex, S.A. v. LaBow*,
783 F.2d 333 (2d Cir. 1986)...................................................................................................10

*Dorn v. Berson*,
No. 09-cv-2717, 2012 WL 1004907 (E.D.N.Y. Mar. 1, 2012)..................................................4

*Gorenstein Enters., Inc., v. Quality Care-USA, Inc.*,
874 F.2d 431 (7th Cir. 1989)  ...............................................................................................6, 7

*In re Oil Spill by the Amoco Cadiz*,
954 F.2d 1279 (7th Cir. 1992) .................................................................................................9

*In re Vivendi Universal, S.A. Sec. Litig.*,
___ F.R.D. ___, No. 02-cv-5571 (SAS), 2012 WL 2829556 (S.D.N.Y. July 5, 2012) .............6

*Jones v. UNUM Life Ins. Co. of Am.*,
223 F.3d 130 (2d Cir. 2000)..................................................................................................6, 7

*Kuper v. Empire Blue Cross & Blue Shield*,
No. 99-cv-1190, 2003 WL 23350111 (S.D.N.Y. Dec. 18, 2003) ........................................3, 4

*Mallis v. Bankers Trust Co.*,
717 F.2d 683 (2d Cir. 1983)..................................................................................................2, 3

*Manzo v. Sovereign Motor Cars, Ltd.*,
No. 08-cv-1229, 2010 WL 1930237 (E.D.N.Y. May 11, 2010)................................................3

*In re Mahurkar Double Lumen Hemodialysis Catheter*,
831 F. Supp. 1354 (N.D. Ill. 1993) ..........................................................................................7

*McIntosh v. Irving Trust Co.*,
873 F. Supp. 872 (S.D.N.Y. 1995)...........................................................................................4

*Mitsui & Co. v. Oceantrawl Corp.*,
906 F. Supp. 202 (S.D.N.Y. 1995)...........................................................................................9

*Osterneck v. Ernst & Whinney*,
489 U.S. 169 (1989)..................................................................................................................4

*Quintel Corp., N.V. v. Citibank, N.A.*,
606 F. Supp. 898 (S.D.N.Y. 1985)...........................................................................................4

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996)........................................................................................4

*SEC v. Musella*,
   748 F. Supp. 1028 (S.D.N.Y. 1989) .............................................................................4

*Slupinski v. First Unum Life Ins. Co.*,
   554 F.3d 38 (2d Cir. 2009)...........................................................................................5

*Thomas v. iStar Financial, Inc.*,
   652 F.3d 141 (2d Cir. 2010) .............................................................................2, 3, 4, 8

**STATUTES**

N.Y. C.P.L.R. § 5001............................................................................................................2, 3, 4

N.Y. C.P.L.R. § 5002.....................................................................................................................2

N.Y. C.P.L.R. § 5004.....................................................................................................................2

N.Y. Jud. Law 27(b) ..................................................................................................................8, 9

**RULES**

Fed. R. Civ. P. 58(b)(2)(A).........................................................................................................1

**OTHER AUTHORITIES**

Restatement (Third) Foreign Relations Law § 823......................................................................10

**INTRODUCTION**

Vivendi's opposition provides no basis for denying Liberty prompt entry of judgment, for

depriving Liberty of the prejudgment interest mandated by New York law, or for under-

compensating Liberty by disregarding the jury's verdict and awarding a judgment in dollars

converted at the breach-day rate.  Vivendi asks the Court to leave this case on its docket

indefinitely based on concerns that are properly raised, if at all, to the Second Circuit, as the

authority cited by Liberty (and ignored by Vivendi) makes clear.  It seeks to deprive Liberty of

prejudgment interest based on inapposite authority and the incredible claim that Liberty "got the

deal it wanted"—ignoring that the jury unequivocally *rejected* that argument and found that, in

fact, Vivendi defrauded Liberty of hundreds of millions of euros.  And, in requesting that the

Court enter judgment in dollars converted at the breach-day rate, it seeks to shift the risk of

currency fluctuation to the injured party and pay less than the damages awarded by the jury.  The

Court should avoid this unjust result by entering judgment on the jury's award in euros—or in

dollars converted at the judgment-day rate—including the interest to which Liberty is entitled.

**ARGUMENT**

**I.    VIVENDI'S ATTEMPT TO DELAY ENTRY OF JUDGMENT IS BASELESS**

Judgment is appropriate now because the jury's verdict fully resolved all open issues

related to Liberty's claims.  *See* Fed. R. Civ. P. 58(b)(2)(A).  Vivendi cites no authority for its

position that judgment must await resolution of outstanding issues in the Class Action because

the two cases are "inextricably linked" for purposes of appeal.  *See* Opp'n (Dkt. No. 322) at 3.

Nor does it address, much less refute, case law showing that such a fundamentally appellate

argument is appropriately addressed to the Second Circuit.  *See* Mot. (Dkt. No. 316) at 2–3.

Because the Second Circuit is fully capable of addressing Vivendi's argument concerning

appellate timing, Vivendi would lose nothing by prompt entry of judgment.  Liberty, by contrast,

1

would be indefinitely deprived of the protection of a final judgment and supersedeas bond.

Vivendi tries to minimize this prejudice to Liberty, claiming that Vivendi's financial condition

"remains strong." Opp'n at 5 & n.3. But recent reports concerning potential disposals of

Vivendi's assets[1] confirm that Liberty's concerns about collecting on a judgment in the United

States are far from "unfounded." *See* Opp'n at 5 n.3. Given the history of this case, Liberty

should not be compelled to rely on Vivendi's footnoted assurances of its financial condition as

security, especially when Vivendi gives no legitimate basis for its request for delay.

## II.     LIBERTY IS ENTITLED TO PREJUDGMENT INTEREST

### A.     New York Law Applies and Mandates 9% Prejudgment Interest on Liberty's Breach of Warranty Claim

Vivendi does not contest that under New York law, prejudgment interest at 9% is

mandatory on Liberty's breach of warranty claim. *See* Mot. at 6–9; N.Y. C.P.L.R. §§ 5001,

5002, 5004. Instead, Vivendi attempts to sidestep this important distinction from the Class

Action by asserting that *federal law* controls prejudgment interest on Liberty's *state-law* claim,

based on a misreading of *Thomas v. iStar Financial, Inc.*, 629 F.3d 276 (2d Cir. 2010), *amended*

*by* 652 F.3d 141 (2d Cir. 2011) (per curiam). Opp'n at 6–7. Unlike here, *Thomas* did not

involve an express agreement that New York law would govern a party's warranties. *See* Ex. 3,

Merger Agreement § 12.10. Moreover, that per curiam opinion did not purport to overrule

established Second Circuit precedent that "state law applies to questions of prejudgment interest

on . . . pendent claims," even when jurisdiction is "predicated upon violations of the federal

securities laws." *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 692 n.13 (2d Cir. 1983); *see also id.*

at 694–95 (holding that plaintiffs were entitled to mandatory prejudgment interest under CPLR

---

[1] *See, e.g.*, Ex. 1, Gwénaëlle Barzic, *Vivendi CEO Quits, Opening Door to Strategy Shift*, Reuters, June 28, 2012; Ex. 2, Sophie Sassard & Leila Abboud, *Vivendi's Grandpa Gunman Loads the Last Bullet*, Reuters, Aug. 5, 2012. Citations to "Ex." refer to the corresponding exhibits attached to the supporting Declaration of Julie B. Rubenstein, Esq.

§ 5001(a) where plaintiffs prevailed on Section 10(b) and common law fraud claims).

Instead, *Thomas* created a narrow exception to this rule, explicitly limiting its application

to "judgments that are based on both state and federal law *with respect to which no distinction is*

*drawn*."  652 F.3d at 150 (emphasis added).  In *Thomas*, the jury was asked, in a single question,

whether the plaintiff proved retaliation by his employer "in violation of Title VII and the New

York City Human Rights Law."  *See* Ex. 4, Verdict Form at 1, *Thomas v. iStar Fin., Inc.*, No. 05-

cv-0606 (S.D.N.Y.) (July 13, 2007).  That single liability question made sense because proof of a

violation of Title VII would establish a violation of the parallel local law as well.  *See Thomas*,

652 F.3d at 144.  The jury was then asked about damages resulting from the retaliation, *see* Ex. 4

at 2, and it rendered a single damages award, compensating the plaintiff "for both federal and

state claims without distinguishing between the two."  *Thomas*, 652 F.3d at 150.[2]

This narrow exception has no application to Liberty's distinct Section 10(b) and breach

of warranty claims.  The jury found different elements establishing liability for each claim—

which implicated different, albeit overlapping, conduct—and separately determined expectation

damages for breach of warranty and out-of-pocket damages for Section 10(b).  The jury's award

of the same amount for each claim does not erase these distinctions.  Instead, Vivendi's attempt

to extend *Thomas* beyond its limited holding threatens to swallow the rule recognized in *Mallis*.[3]

---

[2] *Accord Kuper v. Empire Blue Cross & Blue Shield*, No. 99-cv-1190, 2003 WL 23350111, at *5 (S.D.N.Y. Dec. 18, 2003) (in opinion upon which *Thomas* principally relies, denying application of New York rate where "plaintiff prevailed under both the ADA and the NYSHRL, but the jury did not differentiate between these two grounds for recovery when awarding damages"), *adopted by* 2004 WL 97685 (Jan. 20, 2004); *cf. Manzo v. Sovereign Motor Cars, Ltd.*, No. 08-cv-1229, 2010 WL 1930237, at *11 n.19 (E.D.N.Y. May 11, 2010) (in reviewing award on federal and state employment discrimination claims, noting that "[h]ad the jury distinguished in its award of damages between Manzo's federal and state claims, [New York law] would require that interest on Manzo's state claims be awarded at [9%]").

[3] Both before and after *Thomas*, courts have repeatedly found that plaintiffs are entitled to prejudgment interest on their New York state law claims, even where those claims are pendent to

3

*Thomas*'s applicability is further limited by its context—prejudgment interest on a back-pay award for parallel federal and state/local employment claims.  *See* 652 F.3d at 150 (exclusively citing employment cases awarding interest on back-pay awards).  In *McIntosh v. Irving Trust Co.*, 873 F. Supp. 872, 883 n.13 (S.D.N.Y. 1995)—which was relied upon by *Kuper*, upon which *Thomas* principally relied—the court rejected application of New York's 9% rate on the ground that the otherwise mandatory interest provisions of CPLR § 5001(a) do not apply to back-pay awards.  This case involves a wholly different context, in which expectation damages were awarded for a breach of warranty claim to which CPLR § 5001(a) indisputably applies.

**B.      Prejudgment Interest at 9% Would Also Be Appropriate on Liberty's Section 10(b) Claim**

In arguing that Liberty is not entitled to *any* prejudgment interest on its Section 10(b) claim, Vivendi ignores multiple factors bearing on this determination, including "the remedial purpose of the statute involved," *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) (quotation marks omitted), and the "degree of personal wrongdoing on the part of the defendant." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176 (1989).  Here, Vivendi made false or misleading public statements with scienter, which supports an award of prejudgment interest. *SEC v. Musella*, 748 F. Supp. 1028, 1043 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 138 (2d Cir. 1990).

Vivendi argues that prejudgment interest is not necessary to compensate Liberty because it received benefits that the Class did not.  But all the benefits Vivendi identifies were part of the consideration Liberty expected to receive under the Merger Agreement and thus were factored into the share exchange ratio.  To the extent Vivendi argues that Liberty "got the deal it wanted" and would have entered the Agreement anyway due to these benefits, the jury has already heard

---

a separate federal securities law claim.  *See, e.g., Dorn v. Berson*, No. 09-cv-2717, 2012 WL 1004907, at *8 (E.D.N.Y. Mar. 1, 2012), *adopted by* 2012 WL 1004905 (Mar. 23, 2012); *Quintel Corp., N.V. v. Citibank, N.A.*, 606 F. Supp. 898, 913–14 (S.D.N.Y. 1985).

and rejected this argument.  Nor does Vivendi provide any support for its entirely speculative

"attractive alternative investment" argument that these benefits would have led Liberty to enter

the Agreement in some alternate reality where Vivendi had not engaged in massive fraud.

Vivendi next argues that prejudgment interest is inappropriate because Liberty

supposedly prolonged this litigation.  An unsupported claim that Liberty "intentionally delayed"

filing its complaint, Opp'n at 13, does not merit the denial of interest, particularly when the

complaint was filed well within the statute of limitations and there is no evidence that any delay

was intended to obtain a financial benefit, as opposed to an attempt to settle claims.  *See*

*Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 54–55 (2d Cir. 2009).  Vivendi also blames

Liberty for delaying five months after the Class trial verdict to request a trial date, even though

Liberty made that request before the Court even ruled on post-trial motions and Vivendi opposed

the request as "premature."  *See* Exs. 5–6; *see also* Exs. 7–8.  Vivendi's assertions of Liberty's

delay are meritless.

In discussing the proper interest rate, Vivendi does not distinguish, or even address, the

multiple cases applying the New York rate to federal claims, including federal securities claims.

*See* Mot. at 17–18.  This failure is especially notable here, where—unlike in the Class Action—

the parties directly negotiated the terms of the purchase, including the application of New York

law, which provides for mandatory 9% interest.  *See* Ex. 3, Merger Agreement § 12.10.  As the

Section 10(b) claim flows from the purchase embodied in this Agreement, it is logical to apply

New York's "objective legislative judgment" of the appropriate rate.  *See Alfano v. CIGNA Life*

*Ins. Co. of New York*, No. 07-cv-9661, 2009 WL 890626, at *7 (S.D.N.Y. Apr. 2, 2009).

The Court should reject Vivendi's alternative rate based on the yield of a one-year T-bill

("one-year T-bill rate") that the Class received.  Unlike in the Class Action, Liberty was directly

defrauded by Vivendi, receiving €765 million less in value than Liberty contracted to receive,

while Vivendi received valuable assets and rights it used to generate profit.[4]  This amount is

equivalent to an 11-year involuntary loan, which Vivendi now seeks to hold interest free.[5]  Not

charging Vivendi interest on this amount at a rate at least equal to what it would have had to pay

to borrow these funds at the time would effectively reward Vivendi for its fraud.  *See generally*

*Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139–40 (2d Cir. 2000) (noting that, in

determining proper rate, courts can consider what plaintiff would have charged defendant to

voluntarily loan damages amount).  The one-year T-bill rate does not approximate this rate and

would not achieve prejudgment interest's purpose of full compensation.

The yield of a one-year T-bill is low because it is short term and low risk.  Here, the

greater length of time Vivendi has held money owed to Liberty warrants a higher rate.[6]  In

addition, "the risk of default must be considered in deciding what a compensatory rate of interest

would be."  *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir.

1989) (Posner, J.).  Because Vivendi's risk of default is much greater than the U.S.

---

[4] Liberty agrees that the fact that Class plaintiffs did not directly pay Vivendi for their shares
does not negate the need for prejudgment interest.  *See In re Vivendi Universal, S.A. Sec. Litig.*,
___ F.R.D. ___, No. 02-cv-5571 (SAS), 2012 WL 2829556, at *15 (S.D.N.Y. July 5, 2012).
However, Vivendi's receipt of valuable assets from Liberty warrants a higher rate of interest
under the remedial purposes of Section 10(b) and concerns of fairness that apply in this case.
*See id.* at *14 (recognizing these factors' relevance).  Vivendi would receive an unfair windfall if
it were allowed to make use of these assets, and the proceeds from selling these assets, and then
were only required to compensate Liberty at the one-year T-bill rate.

[5] Contrary to Vivendi's assertion, Opp'n at 15, counsel for Liberty's statement during closing
argument merely recognized that the duration of Liberty's loss was not relevant to the
determination of liability or damages under the Court's charge.  *See* Trial Tr. (6/21/12) 3055:13–
25.  It was hardly a concession that Vivendi has not in fact held the €765 million to which the
jury found Liberty was entitled for the past 11 years.

[6] The value of this longer period is evident from comparing the yield of a ten-year T-bill on
December 14, 2001 (5.24%), to that of a one-year T-bill (2.22%) on the same date.  *See* Bd. of
Governors Fed. Reserve Sys., Selected Interest Rates (Daily) – H.15, http://www.federalreserve.
gov/releases/H15/data.htm.

Government's, the one-year T-bill rate does not approach the rate Vivendi would be charged.

*See id.*  The value of Vivendi's default risk is evidenced by the fact that, after its full liquidity

risk was revealed, Vivendi had to pay interest at an annual rate of 9.25% and 9.62% to

institutional purchasers of its senior notes maturing in seven years.[7]  *See* Ex. 9, Vivendi Offering

Circular;[8] *Gorenstein*, 874 F.2d at 437 (noting that a "more precise estimate" of a defendant's

default risk is "the interest rate paid by the defendant for unsecured loans").

Vivendi asserts that it would be inequitable to award Liberty a higher rate of interest than

the Class simply because Liberty is a sophisticated investor.  The Second Circuit, however, has

recognized an investor's sophistication as a legitimate consideration in ensuring full

compensation, reasoning that the propriety of awarding only the one-year T-bill rate depends, in

part, on "whether the plaintiff would have invested the money at some higher rate." *Jones*, 223

F.3d at 139.  Despite extolling Liberty as a hugely successful and sophisticated investor during

trial, Vivendi now asserts—with no support—that "if the Court were to speculate, it would likely

find that Liberty would not have achieved an interest rate of 9%." Opp'n at 16 n.15.  To rebut

this assertion, Liberty has determined that the compounded annual growth rate of Liberty's stock

from November 30, 2001 to its equivalent at present is 9.6%. *See* Ex. 10, Declaration of Neal

Dermer.  Applying this rate, which correlates to the performance of assets under Liberty's

management, *see id.*, to the jury award would result in interest of over €500 million more than

---

[7] The value of this increased default risk is also more generally reflected by comparing the prime rate with the yield of a one-year T-bill. *See Gorenstein*, 874 F.2d at 437 (generally recommending use of the prime rate to reflect default risk).  The prime rate was 4.75% on December 14, 2001—over 2.5 percentage points higher than the one-year T-bill yield. *See* Selected Interest Rates (Daily) – H.15, *supra* n.6.  In this case, however, the prime rate would be too low because it "applies to short-term credit that is highly likely to be repaid." *In re Mahurkar Double Lumen Hemodialysis Catheter*, 831 F. Supp. 1354, 1395 (N.D. Ill. 1993).

[8] Annual interest rates for the $935,000,000 and €325,000,000 Senior Notes are calculated by dividing the stated annual coupon (9.25% and 9.5%) by the offering price (100% and 98.746%).

Liberty is seeking, further supporting the reasonableness of Liberty's request.

Given the distinctions between this case and the Class Action, as well as Liberty's rate of return during this time period, awarding simple interest at 9% (which is equal to 6.45% compounded annually over this same time period) would compensate Liberty for its loss without resulting in an unwarranted windfall.

**III.    JUDGMENT SHOULD BE ENTERED IN EUROS OR CONVERTED TO DOLLARS AT THE JUDGMENT-DAY RATE**

**A.        New York Law Governs Conversion on Liberty's Breach of Warranty Claim**

New York law governs the issue of currency conversion for Liberty's breach of warranty claim.  *See* Mot. at 4–6; *cf.* Opp'n at 19.  The sole case on which Vivendi relies for its contrary position, *Thomas*, does not even remotely suggest that federal law governs the currency conversion of a damages award on a state-law claim.  *See* 652 F.3d 141.  Nor is Liberty aware of any cases applying this aspect of *Thomas* outside the prejudgment interest context.

By contrast, New York Judiciary Law Section 27(b) expressly supplies the rule governing conversion of foreign-currency awards to dollars in the context of entering judgment. *See* N.Y. Jud. Law § 27(b) (mandating judgment-day conversion in "any case in which the cause of action is based upon an obligation denominated in a currency other than currency of the United States").  Vivendi makes the unsupported assertion that Liberty's cause of action is not based upon an "obligation denominated in *any* currency."  Opp'n at 20 (emphasis added).  On the contrary, Liberty's cause of action is based upon Vivendi's obligation under the Merger Agreement to deliver fairly-valued Vivendi securities—that is, securities that were not inaccurately or fraudulently priced due to Vivendi's breach of the Agreement's warranties.  The ordinary shares Liberty received were priced in euros.  *See, e.g.*, Trial Tr. (6/19/12) at 2578:19– 21.  Therefore, Liberty's "cause of action is based upon an obligation denominated in a currency

other than currency of the United States" within the meaning of Section 27(b).  Entry of

judgment on Liberty's breach of warranty claim in euros, converted to dollars at the judgment-

day rate, is therefore proper.

> **B.      Judgment on Liberty's Section 10(b) Claim Should Be Entered in Euros or
>           Converted at the Judgment-Day Rate**

As explained in Liberty's motion, modern federal courts and commentators recognize

that judgments in foreign currency are appropriate where, as here, the parties contracted or dealt

in foreign currency or in obligations or assets priced in such currency.  *See* Mot. at 9–13; *see also*

*In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1328 (7th Cir. 1992) (per curiam); *Mitsui &*

*Co. v. Oceantrawl Corp.*, 906 F. Supp. 202, 204 (S.D.N.Y. 1995).  This makes sense because

"the currency the parties themselves selected for their dealings" is "the currency in which the

loss is felt."  *In re Oil Spill*, 954 F.2d at 1328.  Liberty suffered its losses in euros, the currency

in which the fraudulently-inflated Vivendi shares that it received were priced.  It is only logical,

then, to enter judgment in that currency.[9]

If the Court determines that judgment on Liberty's Section 10(b) claim should be entered

in dollars, the judgment-day conversion rule should apply.  Contrary to Vivendi's assertions,

Opp'n at 23–24, Liberty has never argued that the transaction at issue in this case is "foreign."

Rather, Liberty has always maintained that its purchase of Vivendi securities was a domestic

transaction and that Liberty's claims arise under U.S. law.  *See, e.g.*, Liberty Media Pls.' Opp'n

to Defs.' Mot. for Partial Summ. J. (July 25, 2011) at 2, 5–7.  Nothing about Liberty's position

here is to the contrary: the judgment-day rule should apply *not* because the transaction was

foreign in nature, but because Liberty received assets denominated in foreign currency, and the

---

[9] Vivendi denies making any concession about conversion at trial, *see* Opp'n at 18, but, in doing
so, responds to an argument that Liberty never made.  Liberty's point is that by agreeing to a
verdict form directing an award of damages in euros, Vivendi conceded that *Liberty felt its loss—
i.e., suffered damages—in euros*.  Vivendi does not rebut this conclusion.

judgment-day rule more accurately replicates "the consequence of holding an obligation in [that foreign currency]." *Competex, S.A. v. LaBow*, 783 F.2d 333, 338 (2d Cir. 1986).

The Restatement of Foreign Relations, which Vivendi ignores, is instructive on this point. It reasons that, "if the foreign currency has appreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of judgment or the date of payment." Restatement (Third) of Foreign Relations Law § 823 cmt c; *see also id.* Reporters' Note 4 ("In general . . . courts have endeavored to select the rule that, in a given case, will prevent the loss due to fluctuation of exchange rates from being borne by the injured or non-breaching party."). As Vivendi recognizes, Opp'n at 17, the euro has appreciated against the dollar since the Merger Agreement was signed. Vivendi's contention that the injured party, Liberty, should be penalized by that appreciation is not only illogical, but unfair. By contrast, the arrangement proposed by the Restatement, whereby the risk of currency fluctuation is borne by the wrongdoer, evens the playing field—particularly here, where the wrongdoer is a French company that operates in euros and has access to euros with which to satisfy a judgment.

To grant Vivendi the result it seeks would give it a discount on its fraud. As it concedes, applying the breach-day rule would result in a damages award of $691,254,000. Opp'n at 17. That figure, at today's rate, is equal to only €532,208,740—€232,791,260 less than the €765,000,000 awarded by the jury. Applying the judgment-day rule avoids such an unjust result.

Dated: October 23, 2012

                                           <u>/s/ Michael L. Calhoon</u>

| | |
|---|---|
| Macey Reasoner Stokes | R. Stan Mortenson |
| BAKER BOTTS L.L.P. | Michael L. Calhoon |
| One Shell Plaza | Alexandra M. Walsh |
| 910 Louisiana Street | Richard P. Sobiecki |
| Houston, TX  77002-4995 | BAKER BOTTS L.L.P. |
| Telephone:  (713) 229-1234 | 1299 Pennsylvania Ave, N.W. |
| Facsimile:  (713) 229-7869 | Washington, D.C. 20004-2400 |
| | Telephone: (202) 639-7700 |
| | Facsimile: (202) 639-7890 |

*Attorneys for Plaintiffs Liberty Media Corporation, LMC Capital LLC,*
*Liberty Programming Company LLC, LMC USA VI, Inc., LMC USA VII, Inc.,*
*LMC USA VIII, Inc., LMC USA X, Inc., Liberty HSN LLC Holdings, Inc.,*
*and Liberty Media International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2012, a copy of the foregoing was served upon the following:

Paul C. Saunders, Esq.
Daniel Slifkin, Esq.
Timothy G. Cameron, Esq.
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

James W. Quinn, Esq.
Penny P. Reid, Esq.
WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153

 /s/ Michael L. Calhoon
Michael L. Calhoon