UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

LIBERTY MEDIA CORPORATION, LMC
CAPITAL LLC, LIBERTY
PROGRAMMING COMPANY LLC, LMC
USA VI, INC., LMC USA VII, INC., LMC
USA VIII, INC., LMC USA X, INC.,
LIBERTY HSN LLC HOLDINGS, INC.,
and LIBERTY MEDIA INTERNATIONAL,
INC.,

          Plaintiffs,

- against -

VIVENDI UNIVERSAL, S.A., and
UNIVERSAL STUDIOS, INC.,

          Defendants.
------------------------------------------------------X

OPINION AND ORDER

03 Civ. 2175 (SAS)



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

Plaintiffs, Liberty Media Corporation *et al.* (collectively, "Liberty Media") sued defendants Vivendi Universal, S.A. and Universal Studios, Inc. (collectively, "Vivendi") alleging violations of federal securities law and breach of express warranty under New York state law (the "Liberty Action").[1] In particular,

---

[1] This Court exercised supplemental jurisdiction over plaintiffs' state-law breach of warranty claim pursuant to 28 U.S.C. § 1367.

1

Liberty Media sued Vivendi for violations of Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission ("SEC") Rule 10b-5 (collectively, "Section 10(b)").  Liberty Media also sued Vivendi for breach of four different express warranties contained in the Merger Agreement that was signed on December 16, 2001.  On June 25, 2012, the jury found Vivendi liable for violating Section 10(b) and for breach of warranty. The Special Verdict Form directed the jury to award damages in euros for both causes of action.[2]  The jury awarded Liberty Media €765,000,000 in damages for each cause of action.[3]

        Liberty Media now moves for entry of final judgment.  Liberty Media argues that New York law governs its breach of warranty claim.  According to Liberty Media, under New York statutory law, judgment must be entered in euros and converted to U.S. dollars using the conversion rate prevailing on the day judgment is entered (the "judgment day rule").  Liberty Media further argues that New York statutory law mandates an award of prejudgment interest at the rate of

---

       [2]      The jury was instructed as follows: "If you determine that Liberty is entitled to damages on both its breach of warranty claims and its Section 10(b) claims, you should award whatever amount of damages you find that Liberty suffered for **each of these claims** even though this may appear to award the same damages twice.  In entering the judgment, the Court will ensure that Liberty does not obtain double recovery for any injury you find that it suffered." Jury Charge, Part II(E) (emphasis in original).

       [3]      Only one award will be included in the judgment so as to prevent any double recovery.

nine percent (9%) per annum.  Vivendi opposes entry of final judgment at this point because the verdict in the related Class Action has not yet been appealed.  In the event that this Court does enter judgment, Vivendi asks that Liberty Media's request for prejudgment interest be denied.  If Liberty Media is awarded prejudgment interest, Vivendi argues that the interest rate should not exceed the yield of a one-year Treasury bill.[4]  Defendants further argue that the jury's euro-denominated verdict be converted to U.S. dollars using the exchange rate on the day the cause of action arose, December 16, 2001 (the "breach-day rule").

For the following reasons, judgment will be entered forthwith, in euros.  In entering judgment, the amount of the euro-denominated jury verdict will not be converted into U.S. dollars and interest shall be computed in accordance with federal prejudgment interest law.

## II. DISCUSSION

### A. Timing

Defendants argue that "[b]ecause the Liberty Action and the Class Action are inextricably intertwined through the doctrine of collateral estoppel, this Court should reserve entering judgment in the Liberty Action until it enters

---

[4] This was the rate awarded to plaintiffs in the Class Action.  *See In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (SAS), 284 F.R.D. 144, 164 (S.D.N.Y. 2012) (awarding plaintiffs "prejudgment interest based on the yield of a one-year treasury note compounded annually").

judgment in the Class Action so that both appeals can be heard together."[5] While it is true that the Liberty Action verdict rests upon the Class Action verdict, which has yet to be appealed, this is not a sufficient ground to defer entry of judgment in the Liberty Action.[6] Nor do Defendants' arguments concerning fundamental fairness and judicial efficiency justify deferring entry of judgment. Accordingly, judgment in the Liberty Action will be entered forthwith.[7]

    **B.    Conversion**

Liberty Media argues that "New York law governs the currency conversion of the damages awarded for Liberty's breach of warranty claim" and that, by statute, New York law requires that the judgment be entered in euros and

---

[5] Memorandum of Law in Opposition to Liberty's Motion for Entry of Final Judgment ("Opp. Mem.") at 2-3.

[6] I am confident that the Second Circuit will coordinate the appeals of both actions so that the Liberty Action is not decided before Vivendi can challenge the Class Action verdict on which the Liberty Action rests. For further assurance, Defendants can move to stay execution of the Liberty Action judgment pending the appeal of both actions by posting a supersedeas bond sufficient to secure the judgment. *See* Fed. R. Civ. P. 62(d).

[7] This judgment will be automatically stayed pending the resolution of Defendants' post-trial motions for judgment as a matter of law and a new trial. *See* Fed. R. Civ. P. 62(b) ("On appropriate terms for the opposing party's security, the court may stay the execution of a judgment – or any proceedings to enforce it – pending disposition of" motions made pursuant to Rules 50, 52(b), 59 and 60). Because this initial stay will be lifted once the post-trial motions are decided, Defendants must move under Rule 62(d) to further stay the judgment in the Liberty Action pending appeal.

converted to dollars at the conversion rate prevailing on the date of judgment.[8] Liberty Media cites the following statute as the codification of the so-called judgment day rule:

> In any case in which the cause of action is based upon an obligation denominated in a currency other than currency of the United States, a court shall render or enter a judgment or decree in the foreign currency of the underlying obligation.  Such judgment or decree shall be converted into currency of the United States at the rate of exchange prevailing on the date of entry of the judgment or decree.[9]

In support of this argument, Liberty Media cites *Vishipco Line v. Chase Manhattan Bank, N.A.*,[10] and *Competex, S.A. v. LaBow*,[11] two cases where jurisdiction was predicated on diversity of citizenship.[12]

While a federal court sitting in diversity must apply New York's currency conversion rules, this is not a diversity case.  Rather, Liberty Media's

---

[8] Liberty's Memorandum of Law in Support of Its Motion for Entry of Final Judgment ("Pl. Mem.") at 4.

[9] N.Y. Judiciary Law § 27(b).

[10] 660 F.2d 854, 865 (2d Cir. 1981) ("As a federal court sitting in diversity, we must apply the currency-conversion rule employed by the courts of New York . . . .").

[11] 783 F.2d 333, 334 (2d Cir. 1986) ("Because determination of the date on which to convert a foreign currency debt into dollars is a substantive question, [the district court] was compelled to apply New York law.") (citation omitted).

[12] *See* Pl. Mem. at 4.

state-law breach of warranty claim is in federal court because of supplemental jurisdiction. And while state law governs stand-alone pendent claims in federal question cases,[13] this too is not the case here given the damages award on plaintiffs' federal securities claim. This case is inherently federal, in part, because the Class Action on which it relied was exclusively federal. Furthermore, the jury awarded the same amount of damages on plaintiffs' federal and state causes of action.[14] Tipping the scales in favor of federal law is the fact that this Court is a federal court that exercised supplemental jurisdiction over plaintiffs' state-law claim. Thus, because this case is inherently federal, federal currency conversion rules apply, not New York state law.

---

[13]    *Cf. Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) (stating that, where jury found for plaintiff on his state-law breach of contract claim and for defendants on all remaining claims including his federal claims, "federal law does not apply to the calculation of prejudgment interest on supplemental state law claims, such as the breach of implied contract claim under New York law at issue in this appeal") (citing *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 692, n.13 (2d Cir. 1983) ("Because the applicability of state law depends on the nature of the issue before the federal court and not on the basis for its jurisdiction, state law applies to questions of prejudgment interest on the pendent claims in an action predicated upon violations of the federal securities laws.") (citation omitted)).

[14]    The jury was instructed as follows: "The same calculation is used to measure damages for breach of warranty and Section 10(b) claims." *See* Trial Transcript at 3095 (quoting Jury Charge at 29).

In support of its argument that in cases arising under federal law, a judgment must be entered in U.S. dollars, Vivendi cites *Shaw, Savill, Albion & Co., Ltd. v. The Fredericksurg*.[15]  In *Shaw*, the Second Circuit held that the breach-day rule applies where a foreign-currency denominated obligation arises in the United States whereas the judgment-day rule applies where the obligation arises in a foreign country.[16]  Both causes of action asserted in the Liberty Action arose in the United States under U.S. law – the Section 10(b) claim arose under federal securities law and the breach of warranty claim arose under New York law.  Accordingly, Vivendi argues that the breach-day rule applies in converting the euro-denominated jury verdict.[17]

While the Second Circuit has never expressly overruled the rule stated in *Shaw* – that a U.S. judgment must be in U.S. currency – it has hinted that judgments in foreign currencies may be permissible.  In *Competex, S.A. v. LaBow*, the Second Circuit noted that the "assumption" that American courts cannot enter a judgment in a foreign currency rested, "at least in part, on the now repealed section

---

[15]   189 F.2d 952, 954 (2d Cir. 1951) ("It is well settled that a money judgment by an American court must be in American currency.").

[16]   *See id.* at 955.

[17]   *See* Opp. Mem. at 24.

20 of the Coinage Act of 1792."[18] Given the repeal of section 20, the Second Circuit stated that this assumption "probably deserves reexamination."[19] "While the Second Circuit has not yet ruled on this question, at least two other circuits and one court in the Southern District of New York have endorsed the practice of entering judgments in foreign currency in appropriate circumstances."[20]

In *Mitsui & Co., Ltd. v. Oceantrawl Corp.*, the district court found that entry of judgment in yen was appropriate because the parties conducted all of their transactions in yen and agreed that the judgment should be entered in yen.[21] Entering judgment in a foreign currency "avoids disputes over the selection of a conversion date."[22]

> Entry of judgment in the currency of the parties' transactions accords with principles of fairness and with the goal of making injured parties whole because it provides them with payment in the currency for which they

---

[18] 783 F.2d at 337.

[19] *Id.*

[20] *Zim Integrated Shipping Servs. v. PPG Indus., Inc.*, Nos. 09 Civ. 10099, 09 Civ. 10081, 09 Civ. 9851, 2010 WL 3001113, at *4 n.3 (S.D.N.Y. July 29, 2010) (citing *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1328 (7th Cir. 1992) (francs); *Sea–Roy Corp. v. Parts R Parts, Inc.*, 173 F.3d 851, 1999 WL 111281, at *4 (4th Cir. 1999) (deutschemarks) (unpublished decision); *Mitsui & Co., Ltd. v. Oceantrawl Corp.*, 906 F. Supp. 202, 203 (S.D.N.Y. 1995) (yen)).

[21] *See* 906 F. Supp. at 204.

[22] *Id.*

8

bargained.[23]

Here, Liberty Media received euro-denominated Vivendi shares when the Merger Agreement closed. Those shares traded on the Paris Bourse exchange and were priced in euros. Consequently, the jury awarded Liberty Media damages in euros. Thus, it is beyond dispute that the euro is the currency in which Liberty Media bore risks and suffered losses.[24] Moreover, Liberty Media agrees that judgment in euros is "equally sustainable on [its] Section 10(b) claim."[25] Accordingly, judgment will be entered in euros without conversion to U.S. dollars.[26]

---

[23] *Id.*

[24] *See In re Oil Spill*, 954 F.2d at 1328 ("The court should enter the judgment in the currency the parties themselves selected for their dealings, the currency in which the loss is felt.").

[25] Pl. Mem. at 11-12 ("Here, entry of judgment in euros is appropriate and would best accomplish the objective of making Liberty whole for the fraudulently inflated, euro-denominated Vivendi shares it received."). Alternatively, if this Court decides that the judgment must be converted into U.S. dollars, Liberty Media urges the Court to use the judgment day rule. *See id.* at 12.

[26] This option best respects the will of the jury which calculated the amount of damages in euros. If this Court were to convert the jury award into U.S. dollars, it would use the breach-day rule as stated in *Shaw* because this case is primarily federal and the jury was presented with evidence that the dollar and euro were approximately equal in value at the time of the merger transaction. *See* Opp. Mem. at 24, n.28.

### C. Prejudgment Interest

Liberty Media argues that "the issue of prejudgment interest on Liberty's breach of warranty claim is governed by New York law" which "mandates that a plaintiff receive prejudgment interest at a rate of nine percent per annum on an award of damages for breach of warranty."[27] Vivendi urges the Court to adopt the yield of a one-year Treasury bill as the appropriate interest rate should this Court determine that some amount of prejudgment interest is appropriate.[28]

Under federal law, "it is within the sound discretion of the trial court whether or not to award prejudgment interest at all, and the same considerations that inform that decision should also inform the choice of interest rate."[29] In deciding whether to award prejudgment interest, courts should consider the following factors: "'(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.'"

---

[27]   Pl. Mem. at 6.

[28]   *See* Opp. Mem. at 14.

[29]   *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 314 F. Supp. 2d 201, 203 (S.D.N.Y. 2003).

Here, as in the Class Action, "[s]ome measure of prejudgment interest is necessary to compensate plaintiffs."[30] The next question, then, is whether to apply federal law or the New York statute in determining the amount of such interest. If plaintiffs prevailed solely on their breach of warranty claim, this Court would adopt the New York statutory rate of nine percent. Conversely, if plaintiffs prevailed solely on their federal securities claim, interest would be computed in accordance with federal law.[31] But here, plaintiffs prevailed on both claims in the same amount.

The case that most closely resembles the instant fact pattern is *Thomas v. Istar Financial, Inc.*[32] In *Istar*, the plaintiff brought suit for violations of Title VII of the Civil Rights Act of 1964 and parallel provisions of the New York City Human Rights Law.[33] Without differentiating between the federal and local claims, the jury found for plaintiff and awarded him compensatory damages,

---

[30] *In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 162 (S.D.N.Y. 2012).

[31] "While no federal statute controls the rate of prejudgment interest, 28 U.S.C. § 1961(a) links the postjudgment interest rate to the interest the Government pays to holders of United States Treasury bills with an average one-year constant maturity." *Old Dominion*, 314 F. Supp. 2d at 203.

[32] 652 F.3d 141 (2d Cir. 2011).

[33] *See id.* at 144.

including front-pay, back-pay and non-economic pain and suffering.[34] The district court decided to award prejudgment interest on plaintiff's back-pay damages.[35]

> While New York law provides for a 9 percent annual rate of interest, see N.Y.C.P.L.R. § 5004, when "a judgment is based on violations of both federal and state law, courts in this circuit uniformly have applied a federal interest rate, most commonly based on the average rate of return on one-year Treasury bills ("T-bills") for the relevant time period." *Kuper v. Empire Blue Cross and Blue Shield*, No. 99 cv 1190, 2003 WL 23350111, at *3 (S.D.N.Y. Dec.18, 2003) (citing numerous cases).[36]

Citing *Marfia v. T.C. Ziraat Bankasi* for the proposition that "'federal law does not apply to the calculation of prejudgment interest on supplemental state law claims[,]'" the plaintiff argued "that the district court should have ordered prejudgment interest on his compensatory damages to be calculated based on the New York state interest rate rather than the federal lower rate."[37] The Second Circuit disagreed, stating:

> This argument is without merit. Whereas *Marfia* concerned damages on state law claims alone (the jury having found for the defendant on all federal claims), Thomas received an award of damages that compensated for both federal and

---

[34] *See id.*

[35] *See id.* at 145.

[36] *Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 264 (S.D.N.Y. 2007).

[37] *Thomas*, 652 F.3d at 150 (quoting *Marfia*, 147 F.3d at 90).

> state claims without distinguishing between the two. As the district court stated, and we now hold, judgments that are based on both state and federal law with respect to which no distinction is drawn shall have applicable interest calculated at the federal interest rate. In so holding, we adopt the persuasive practice of a number of district courts in this Circuit that have previously considered the issue.[38]

Accordingly, the appropriate rate of interest is the federal interest rate based on the average rate of return on one-year Treasury bills for the relevant time period between the time plaintiffs' claims arose (December 16, 2001) until the entry of judgment.[39]

## III. CONCLUSION

For the foregoing reasons, judgment will be entered forthwith in the amount of €765,000,000 with prejudgment interest starting December 16, 2001, using the average rate of return on one-year Treasury bills, compounded annually. The parties are directed to prepare a Judgment in accordance with this Opinion and Order by January 14, 2013. The Clerk of the Court is directed to close plaintiffs' Motion for Entry of Final Judgment (Docket Entry # 315).

---

[38] *Id.* (citing cases).

[39] The average rates of return for one-year Treasury bills can be found at www.federalreserve.gov/releases.

> state claims without distinguishing between the two. As the district court stated, and we now hold, judgments that are based on both state and federal law with respect to which no distinction is drawn shall have applicable interest calculated at the federal interest rate. In so holding, we adopt the persuasive practice of a number of district courts in this Circuit that have previously considered the issue.[38]

Accordingly, the appropriate rate of interest is the federal interest rate based on the average rate of return on one-year Treasury bills for the relevant time period between the time plaintiffs' claims arose (December 16, 2001) until the entry of judgment.[39]

## III. CONCLUSION

For the foregoing reasons, judgment will be entered forthwith in the amount of €765,000,000 with prejudgment interest starting December 16, 2001, using the average rate of return on one-year Treasury bills, compounded annually. The parties are directed to prepare a Judgment in accordance with this Opinion and Order by January 14, 2013. The Clerk of the Court is directed to close plaintiffs' Motion for Entry of Final Judgment (Docket Entry # 315).

---

[38]  *Id.* (citing cases).

[39]  The average rates of return for one-year Treasury bills can be found at www.federalreserve.gov/releases.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           January 9, 2013

**- Appearances -**

**For Plaintiffs:**

| | |
|---|---|
| Macey R. Stokes, Esq. | R. Stan Mortenson, Esq. |
| Baker Botts LLP | Michael L. Calhoon, Esq. |
| One Shell Plaza | Alexander M. Walsh, Esq. |
| 910 Louisiana Street | Baker Botts LLP |
| Houston, TX 77002 | 1299 Pennsylvania Avenue, N.W. |
| (713) 229-1234 | Washington, D.C. 20004 |
| | (202) 639-7700 |

**For Defendants:**

| | |
|---|---|
| Daniel Slifkin, Esq. | James P. Quinn, Esq. |
| Cravath Swaine & Moore LLP | Penny P. Reid, Esq. |
| Worldwide Plaza | Weil, Gotshal & Manges LLP |
| 825 Eighth Avenue | 767 Fifth Avenue |
| New York, NY 10019 | New York, NY 10153 |
| (212) 474-1000 | (212) 310-8000 |